STATE OF NORTH CAROLINA v. GEORGE LAFAYETTE SMITH

No. 7112SC745

(Filed 15 December 1971)

1. Narcotics § 4— possession of heroin — sufficiency of evidence

  The State's evidence was sufficient for the jury in this prosecution for unlawful possession of heroin where it tended to show that a police officer saw three tinfoil packages drop from the side of defendant as defendant emerged from an automobile, and that the packages contained heroin.

2. Constitutional Law § 33— privilege against self-incrimination

  The privilege against self-incrimination can be claimed only by the witness, and when it is claimed, it is guaranteed by the Fifth Amendment to the Constitution of the United States, as well as by Art. I, § 23, of the Constitution of North Carolina.

3. **Constitutional Law § 33— possible self-incrimination — testimony insufficient in itself to subject witness to prosecution**

In a prosecution for unlawful possession of heroin, the trial court did not err in permitting defendant's witness, who was under indictment for transportation of the heroin defendant was accused of possessing, to refuse to answer on the ground of his privilege of self-incrimination questions asked by defense counsel relating to whether the witness was with defendant in an automobile on the date of defendant's arrest and what occurred and what the witness observed while he was in the automobile and when defendant was arrested, since the witness' answers may tend to incriminate him even though they would not in themselves subject him to a criminal prosecution.

4. **Narcotics § 3— impounding of witness' automobile — irrelevancy**

In this prosecution for unlawful possession of heroin, defendant was not prejudiced by the trial court's ruling that the answer of defendant's witness to a question as to whether his automobile was impounded subsequent to his arrest with defendant would not be put in the record because it could have no connection with the guilt or innocence of defendant.

APPEAL by defendant from *Braswell, Judge,* 19 July 1971 Session of Superior Court held in CUMBERLAND County.

Defendant was tried upon a bill of indictment, proper in form, charging him with the felony of unlawfully possessing a quantity of the narcotic drug heroin.

The evidence for the State tended to show, except where quoted, that William J. Bentley, a police officer of the City of Fayetteville attached to the Inter-Agency Bureau of Narcotics, was on duty during the early morning hours of 5 March 1971, that he saw a 1969 two-door Lincoln Continental in front of 2502 Slater Avenue, and that the defendant and two companions got in it and drove off. Bentley followed the vehicle to where it stopped in front of a house located at 306 Davis Street. He stopped the vehicle he was operating about twenty feet behind and left his headlights shining on the vehicle in front, got out, and walked up to the Lincoln. As Bentley approached, the driver, Elwood Newman, who had emerged from the left side of the vehicle, said something to the officer and looked toward the opposite side of the car where the defendant was getting out of the car from the rear seat. Officer Bentley testified:

"* * * When I seen him get out of the car, I noticed two or three was in the car at that time. I saw some shiny objects, which I observed was tinfoil, going more or less

down the side of his leg. I then went across in front of the car, ran in front of the car, to the right side, retrieved three tinfoil packages; and at this time a female got out and ran in the rear of 306 Davis Street. It was three to eight seconds from the time I saw what appeared to be tinfoil packages dropping from the side of the defendant until the time I got around to the other side of the car. I saw this tinfoil, three small tinfoil packages, laying on the ground around where Lafayette Smith was.

    \* \* \* The other persons in the car were doing nothing to my knowledge when the matter was dropped down the defendant's leg. I saw no other items come out of any of the windows in the car. \* \* \*

\*   \*   \*

    At the time I saw the items drop, I had the bright lights on my car on this car and also the door of the Lincoln Continental was open and, therefore, the inside light from there was on. \* \* \*

\*   \*   \*

    I had had several occasions to meet Lafayette Smith. The defendant's house is located at 2502 Slater Avenue, the original place I saw the defendant in the automobile."

Each of the three tinfoil packages contained the narcotic drug heroin.

    The evidence for the defendant tended to show that Elwood Newman did own a 1969 Lincoln Continental. Newman testified on cross-examination that at the time of the trial of this defendant, he was under indictment for the transportation of "those three packages of heroin on the fifth day of March." Miss Gail P. Lay, defendant's witness, testified that on this occasion she was in the front seat of the two-door automobile with Newman. Defendant Smith and a Miss Glendale Pickney were seated in the rear. They stopped in front of Pickney's home on Davis Street, and defendant got out of the car on the driver's side while Pickney was getting out on the right or passenger's side. The witness Lay testified that she did not see the defendant drop any objects wrapped in tinfoil. Pickney testified that she did not see the defendant Smith "in possession of any objects wrapped in tinfoil from the time Elwood Newman came to Lafayette Smith's house until the time that he was placed in the police car." The

defendant testified that he did not have any heroin in his possession. All of the occupants of the car were arrested and charged with the possession of heroin. Lay and Pickney testified that they too had no heroin in their possession on this occasion.

The jury returned a verdict of guilty as charged. From a judgment imposing a prison sentence, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Hudson for the State.*

*Anderson, Nimocks & Broadfoot by Stephen Nimocks for defendant appellant.*

MALLARD, Chief Judge.

[1]  Defendant contends that the trial judge committed error in failing to allow his motions for judgment of nonsuit made at the close of the evidence for the State and again at the close of all the evidence. We hold that there was ample evidence to require submission of the case to the jury.

[3]  The defendant also contends that the trial judge committed error in failing to require the defendant's witness, Elwood Newman, to answer the following questions propounded to him by the defendant's attorney, in the absence of the jury, after the witness had refused to answer the question, "Were you in an automobile at this particular time?" on the grounds "that it might tend to incriminate" him:

"And ask Mr. Newman, if the defendant Lafayette Smith, was in an automobile with him on the fifth day of March 1971?

\*    \*    \*

Mr. Newman, if you did take LaFayette Smith up on the fifth day of March, where did you then proceed?

\*    \*    \*

Did you stop your automobile at the location of 307 Davis Street on this particular day in question?

\*    \*    \*

Did you, Mr. Newman, at any time see the defendant,

Lafayette Smith, have in his possession any object wrapped in tinfoil?

*   *   *

Where was the defendant Lafayette Smith, when he was a passenger in the car described by the State's witness, where was he seated in the automobile?

*   *   *

Did you have a conversation with Mr. Bentley, on the day of March 5th, in the close proximity of the automobile?

*   *   *

Did you ever see Officer Bentley go from the left side of the Lincoln automobile, around the front of the Lincoln automobile, to the right hand side of the automobile?

*   *   *

Did you ever see Office Bentley pick up any objects, wrapped in tinfoil, from the close proximity of the automobile or the close proximity of Lafayette Smith?

*   *   *

Did Officer Bentley ever tell you where he found the objects that were wrapped in tinfoil?

*   *   *

Did you, Mr. Newman, hold a flashlight, at the request of Mr. Bentley, on him, hold a flashlight upon the person of Lafayette Smith, while Officer Bentley searched the person of Lafayette Smith?

*   *   *

When were you charged with the possession of these same narcotics?

*   *   *

Will you describe the windows and doors of the 1969 Lincoln Continental that you owned on March 5th, 1971?"

The witness Newman testified that he was under indictment for the transportation, on the same date, of the same three packages of heroin that the defendant was charged with possessing. Newman's lawyer was present in the courtroom, and from time to time during his interrogation by defendant's counsel, Newman was permitted to consult with his lawyer before responding to questions. To each of the foregoing questions, Newman

---

---

replied that he refused to answer on the grounds that the answer might tend to incriminate him. The judge declined to require that he answer them and defendant excepted. The defendant also excepted to the following typical findings of the trial judge in holding that the witness Newman would not be required to answer the questions:

> "At this juncture, having heard all of the State's evidence and having heard that the evidence tends to show that Elwood Newman was the driver of the automobile which did go to the residence of this defendant, picked him up, drove him to the Davis Street residence, 206, and that the evidence tends to show that they were in there in each others company at all times of the hours in question, that there they were in the same vehicle for (sic) which the defendant alighted and from whose body State Exhibit Number 1, containing heroin was seen falling in front of his body or by his feet, and that the court believes that the answers to questions that would logically follow would have a tendency to incriminate him, and therefore he has claimed the privilege of refusing to answer and the Court rules that he will not be required to answer.

> \*   \*   \*

> I hold, in view of the evidence which is of record here, that it would be a violation of his constitutional rights to require him to answer and, therefore, he will not be required to answer, for the record or in the presence of the jury."

In *Hoffman v. U. S.*, 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814 (1951), in discussing the privileges against self-incrimination granted by the Fifth Amendment to the United States Constitution, the Court said:

> "\* \* \* This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure. *Counselman v. Hitchcock*, 142 U.S. 547, 562, 35 L. Ed. 1110, 1113, 12 S. Ct. 195 (1892); *Arndstein v. McCarthy*, 254 U.S. 71, 72, 73, 65 L. Ed. 138, 141, 142, 41 S. Ct. 26 (1920).

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal

criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. * * * The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers v. United States,* 340 U.S. 367, *ante,* 344, 71 S. Ct. 438, 19 ALR 2d 378 (1951), and to require him to answer if 'it clearly appears to the court that he is mistaken.' *Temple v. Commonwealth,* 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' See Taft, J., in Ex parte Irvine, 74 F 954, 960 (CC SD Ohio 1896)."

[2] The privilege against self-incrimination can be claimed only by the witness, and when it is claimed, it is guaranteed by the Fifth Amendment to the Constitution of the United States, as well as by Art. 1, § 23 of the Constitution of North Carolina. See *State v. Morgan,* 133 N.C. 743, 45 S.E. 1033 (1903).

In *Emspack v. United States,* 349 U.S. 190, 99 L. Ed. 997, 75 S. Ct. 687 (1955), the Court said:

"* * * The protection of the Self-Incrimination Clause is not limited to admissions that 'would subject [a witness] to criminal prosecution'; for this Court has repeatedly held that 'Whether such admissions by themselves would support a conviction under a criminal statute is immaterial' and that the privilege also extends to admissions that may only tend to incriminate. * * *"

In *Allred v. Graves,* 261 N.C. 31, 134 S.E. 2d 186 (1964), it is said:

---

---

"It is an ancient principle of the law of evidence that a witness shall not be compelled, in any proceeding, to make disclosures or to give testimony which will tend to incriminate him or subject him to fines, penalties or forfeitures. * * * The rule against self-incrimination has existed from an early date in the English common law, and its origin has been said to be based on no statute and no judicial decision but on a general and silent acquiescence of the courts in a popular demand. * * *

The constitutional guaranties against self-incrimination should be liberally construed. *Gouled v. United States,* 255 U.S. 298, 65 L. Ed. 647; *Quinn v. United States,* 349 U.S. 155, 99 L. Ed. 964; *Ullmann v. United States,* 350 U.S. 422, 100 L. Ed. 511, 53 A.L.R. 2d 1008; 98 C.J.S., Witnesses, sec. 432.

The privilege against self-incrimination may be exercised by a witness in any proceeding. * * * "

[3] We hold that on this record, Elwood Newman (offered as a witness by the defendant), in good faith and in a proper manner, claimed the privilege against self-incrimination and that the answers to the questions propounded, in the setting in which they were asked, were ones of possible self-incrimination and fall within the scope of the privilege. The able and experienced trial judge so found and properly held that the witness should not be required to answer the questions propounded. *Smith v. Smith,* 116 N.C. 386, 21 S.E. 196 (1895); *LaFontaine v. Southern Underwriters,* 83 N.C. 133 (1880); *State v. Huffstetler,* 1 N.C. App. 405, 161 S.E. 2d 617 (1968); 8 Wigmore, Evidence, §§ 2268, 2271; 98 C.J.S., Witnesses, §§ 435, 436, 437.

[4] Defendant also contends that the trial judge committed error in holding that the answer of the defendant's witness Newman to a question as to whether his automobile was impounded subsequent to his arrest on 5 March 1971, would not be put in the record because it could have no connection with the guilt or innocence of the defendant. This question was asked and the ruling was made in the absence of the jury. Even if it were error to fail to permit the answer of the witness to appear of record for the assigned reason, it does not appear how it could be prejudicial to the defendant. See *Highway Commission v. Pearce,* 261 N.C. 760, 136 S.E. 2d 71 (1964).

We have examined each of the defendant's other assignments of error relating to the admission and exclusion of testimony and find no error prejudicial to the defendant.

In the trial we find no error.

No error.

Judges HEDRICK and GRAHAM concur.