JOHNSON COUNTY NATIONAL BANK AND TRUST COMPANY v. LARRY GRAINGER AND JACQUELINE W. GRAINGER

No. 7810SC626

(Filed 17 July 1979)

Constitutional Law § 74— refusal to answer questions on oral deposition—no possible self-incrimination shown

The trial court's order requiring defendant to answer questions asked him on oral deposition did not infringe upon defendant's privilege against self-incrimination where 182 questions were asked; defendant answered only preliminary questions about his background; none of the questions disclosed on their face any reason why an answer might be incriminating; and defendant failed to reveal to the court any rational grounds for believing that a real danger of self-incrimination might exist if he should be required to answer.

APPEAL by defendant, Larry Grainger, from *McLelland, Judge*. Order entered 2 June 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 29 March 1979.

This is an appeal from an order directing the defendant, Larry Grainger, to answer questions asked him on oral deposition which he had refused to answer on the grounds that he might incriminate himself.

Plaintiff instituted this civil action to recover the balance which plaintiff alleged is owed on a promissory note in the original amount of $69,954.00 executed 24 July 1976 by defendants payable to Gordon Aviation Sales, Inc., of St. Ann, Missouri, and subsequently assigned to the plaintiff bank. Plaintiff alleged

that defendants executed the note and as security therefor also executed a Security Agreement covering a 1965 Cessna airplane, which plane plaintiff alleged on information and belief was destroyed as result of a crash. Plaintiff alleged that all requests by plaintiff to defendants that they provide information concerning the present locale of the airplane, as well as information concerning its possible destruction, had been unanswered.

Defendants filed answer in which they denied all allegations of the complaint except the allegations that plaintiff is a banking institution organized and existing under the laws of Kansas and that defendants are citizens and residents of Wake County, N.C. In a further answer defendants alleged that their purported signatures on the note and security agreement are forgeries.

Under G.S. 1A-1, Rules 26 and 30, plaintiff gave notice of the taking of defendants' depositions upon oral examination. At the examination, defendant Larry Grainger answered initial questions put to him by the attorneys for the plaintiff, but refused to answer all further questions on the grounds that his answers might tend to incriminate him. Plaintiff then applied pursuant to G.S. 1A-1, Rule 37(a) for an order of the court requiring the defendant Larry Grainger to answer the questions which he had refused to answer. The court granted plaintiff's motion and ordered defendant Larry Grainger to answer the questions. He appeals from this order.

*Hatch, Little, Bunn, Jones, Few & Berry by William P. Few for plaintiff appellee.*

*Purser & Barrett by George R. Barrett for Larry Grainger, defendant appellant.*

PARKER, Judge.

Appellant contends that the order appealed from infringes upon his privilege against self-incrimination provided by Article I, Sec. 23 of the Constitution of North Carolina and by the Fifth Amendment to the Constitution of the United States, which, since the decision of *Malloy v. Hogan*, 378 U.S. 1, 12 L.Ed. 2d 653, 84 S.Ct. 1489 (1964), is applicable to the States by operation of the Fourteenth Amendment. On this record we find no infringement of the constitutional privilege invoked has been shown. Accordingly, we affirm the trial court's order.

That this is a civil rather than a criminal proceeding is without significance in the determination of the question before us, for the constitutional privilege against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 69 L.Ed. 158, 161, 45 S.Ct. 16, 17 (1924); *Accord, Allred v. Graves*, 261 N.C. 31, 134 S.E. 2d 186 (1964). Moreover, the protection afforded by the privilege against self-incrimination "does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461, 42 L.Ed. 2d 574, 585, 95 S.Ct. 584, 592 (1975); *accord Smith v. Smith*, 116 N.C. 386, 21 S.E. 196 (1895). However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities," *Zicarelli v. Investigation Commission*, 406 U.S. 472, 478, 32 L.Ed. 2d 234, 240, 92 S.Ct. 1670, 1675 (1972), and a witness may not arbitrarily refuse to testify without existence in fact of a real danger, it being for the court to determine whether that real danger exists.

The witness is not exonerated from answering merely because he ' declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers v. United States*, 340 U.S. 367, 95 L.Ed. 344, 71 S.Ct. 438, 19 A.L.R. 2d 378 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple v. Commonwealth*, 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as

much by his personal perception of the peculiarities of the case as by the facts actually in evidence." See Taft, J. in Ex parte Irvine, 74 F. 954, 960 (CCSD Ohio 1896).

*Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L.Ed. 1118, 1124, 71 S.Ct. 814, 818 (1951); *See* Annot., 95 L.Ed. 1126 (1951); See also 8 Wigmore, Evidence (McNaughton rev. 1961) § 2271; 1 Stansbury's N.C. Evidence (Brandis Revision) § 57; 81 Am. Jur. 2d, Witnesses, § 52.

The difficulties inherent in attempting to reconcile the potential conflict between the principle that every citizen, when properly called as a witness, owes the duty to testify truthfully to all relevant matters which are the subject of a judicial inquiry and the principle that no one may be compelled to testify to anything which might tend to incriminate him, were long ago recognized by Chief Justice Marshall at the trial of Aaron Burr, 25 F. Cas. 38, 39-41 (C.C.D.Va. 1807) and by Chief Justice Smith of our own Supreme Court in *LaFontaine v. Southern Underwriters*, 83 N.C. 132 (1880). Granted that the constitutional privilege against self-incrimination must take precedence and that the privilege must be sustained whenever it is clear from the nature of the question or from the context in which it is asked that a truthful answer might tend to incriminate the witness, the problem remains as to how the court, which cannot know all that the witness knows about the matter, is to determine whether the witness is entitled to privilege in those cases where it is not clear, either from the question itself or from the context in which it is asked, that a truthful answer might tend to incriminate the witness. No one has stated the problem better than Judge Learned Hand in *United States v. Weisman*, 111 F. 2d 260 (2nd Cir. 1940) when he said (p. 262):

Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.

The proper course for the court to follow when confronted with this problem has been stated as follows:

> When the claim (of the privilege) is made, if it is immediately clear that an answer might tend to incriminate him, the claim should be sustained. Otherwise, the judge may, in the absence of the jury, inquire into the matter to the minimum extent necessary to determine that a truthful answer *might* tend to incriminate, and should deny the claim only if there is no such possibility.

N.C. Evidence (Brandis Revision), § 57, pp. 179-80.

Applying these principles in the present case, we find that a total of 182 questions was asked of the appellant, some of which he answered but most of which he refused to answer on the grounds that his answers might tend to incriminate him. (It is not clear from the record exactly which questions appellant answered; his brief states that "[a]fter answering preliminary questions about his employment and background, Defendant refused to answer all other questions propounded to him on the grounds that anything he said may tend to incriminate him.") We have carefully reviewed all of the questions asked, and, while some of them are of doubtful relevancy to any issue raised in this case, we find none which on its face discloses any reason why an answer might be incriminating. It would be possible, we suppose, by exercise of a rich enough imagination to conjure up a scenario by which the answer to any question, however apparently innocent, might tend to incriminate. The constitutional privilege invoked, however, protects against real, not against imaginary dangers. *Zicarelli v. Investigation Commission, supra; Mason v. United States*, 244 U.S. 362, 61 L.Ed. 1198, 37 S.Ct. 621 (1917). Nothing in the record in this case suggests any reason why the apparently innocuous questions asked might tend to probe into incriminatory matters. True, defendants pled that their purported signatures on the note and security agreement were forgeries, but if so the crime of forgery must have been committed by someone else and the privilege against self-incrimination does not apply to testimony which incriminates another. So far as the present record discloses, no criminal proceeding or investigation has ever been instituted because of the use or disappearance of the airplane which was subject to the security agreement, and it requires the exercise of

a free-ranging imagination unsupported by even any suggestion of fact to speculate that it might have been connected with criminal activity. In short, the appealing defendant, asserting the privilege to refuse to answer questions which on their face and in the context in which asked were innocuous, has failed to assist the court by pushing the door even a tiny bit ajar so as disclose some rational grounds for believing that a real danger of self-incrimination might exist if he should be required to answer. Under these circumstances we find no basis for reversing the trial court's ruling.

So deciding, we find it unnecessary to discuss the question, argued in the brief of the parties, as to whether defendants may in any event have waived their privilege in this case by having previously answered interrogatories propounded to them in an earlier suit brought on this same claim in the United States District Court in Kansas.

The order appealed from is

Affirmed.

Judges HEDRICK and CARLTON concur.