STATE OF NORTH CAROLINA v. LONNIE WINSLOW BALLARD

No. 255A92

(Filed 8 April 1993)

**Indigent Persons § 19 (NCI4th)— indigent defendant—psychiatric assistance—right to ex parte hearing**

**Am Jur 2d, Criminal Law §§ 701, 714.**

STATE v. BALLARD

[333 N.C. 515 (1993)]

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Hight, J., at the 26 February 1992 Regular Criminal Session of Superior Court, Durham County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 17 March 1993.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine Crawley, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was tried in a noncapital trial for murder in the first degree of Marlon Branch. The trial court denied defendant's motion that he be allowed to give evidence supporting his request for appointment of a psychiatric expert *in camera* and *ex parte*. We hold that an indigent defendant who requests that evidence supporting his motion for expert psychiatric assistance be presented in an *ex parte* hearing is constitutionally entitled to have such a hearing, and that the trial court erred in denying defendant's request to be heard on this matter *ex parte*.

On 11 October 1990 defendant's court-appointed counsel moved before Judge Orlando F. Hudson for an *in camera* review of information supporting the appointment of a psychiatric expert to assist defendant in the preparation of his defense. When Judge Hudson asked whether the *in camera* review was to be "with or without the prosecutor," defense counsel responded: "Without the presence of the District Attorney." Judge Hudson then denied the motion, but offered to hear such information in open court. Defense counsel moved for the appointment of a psychiatric expert but stated that he could not "particularize [defendant's] need in the presence of the District Attorney . . . because in so doing . . . I may jeopardize my client's defense." The trial court, in its discretion, again ruled that it would "not hold an *in camera* . . . hearing, *ex parte* of the State," to which defendant excepted.

Defendant's court-appointed attorney was permitted to withdraw as counsel on 13 December 1990. He was succeeded by the appointment of the Public Defender, who was subsequently disqualified following a hearing on the State's motion because of a potential conflict of interest.

STATE v. BALLARD

[333 N.C. 515 (1993)]

On 3 September 1991 Judge Coy Brewer, Jr., heard two motions from a third court-appointed attorney. The first motion requested that defendant be committed to Dorothea Dix Hospital for an evaluation of his competency to proceed to trial. In the second the attorney requested the court's permission to withdraw as defendant's counsel. Both motions were granted, and on 5 September 1991 a fourth attorney was appointed to represent defendant.

On 21 November 1991 Judge J. Milton Read, Jr., held a hearing regarding defendant's competency to stand trial. Dr. Patricio P. Lara, a forensic psychiatrist at Dorothea Dix Hospital, testified that defendant had declined to take psychological tests normally given to patients undergoing evaluation. Nevertheless, defendant was interviewed and observed over the course of eighteen or nineteen days at the hospital, and Dr. Lara was able to conclude, based on these observations, that defendant was competent to stand trial.

On 10 February 1992 defendant's fourth court-appointed attorney moved to withdraw as counsel, in part because defendant had recently refused to meet with him or to respond to the attorney's letters. Subsequently, at trial, defendant stated that he wished to represent himself; the trial court allowed defendant to proceed *pro se* and directed defendant's fourth counsel to assist him in his defense.

Defendant contends that denying his motion for an *ex parte* hearing of evidence supporting his request for the assistance of a psychiatric expert forced him to jeopardize his privilege against self-incrimination and his right to the effective assistance of counsel, guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. We agree.

In *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), the Supreme Court held that once a defendant has made "an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense," fundamental fairness requires "the State . . . , at a minimum, [to] assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 82-83, 84 L. Ed. 2d at 66. Since *Ake*, this Court has frequently recognized that "fundamental fairness and the principle that an indigent defendant must be given a fair opportunity to present his defense" underlie the indigent defend-

ant's right to the assistance of an expert at state expense. *State v. Parks*, 331 N.C. 649, 655, 417 S.E.2d 467, 471 (1992) (quoting *State v. Tucker*, 329 N.C. 709, 718, 407 S.E.2d 805, 811 (1991)). We have applied these principles to defendants' motions for many kinds of experts, including independent investigators, *e.g.*, *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986); pathologists, *e.g.*, *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986); medical experts, *e.g.*, *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986); psychiatrists, *e.g.*, *State v. Parks*, 331 N.C. 649, 417 S.E.2d 467; and fingerprint experts, *e.g.*, *State v. Phipps*, 331 N.C. 427, 418 S.E.2d 178 (1992). In each of these cases we have noted, in accord with *Ake*, that the indigent defendant is entitled to the assistance of an expert in preparation of his defense when he makes a "threshold showing of specific necessity." *E.g.*, *State v. Parks*, 331 N.C. at 656, 417 S.E.2d at 471. The indigent defendant must "make[ ] a particularized showing that (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." *Id.*

In none of these cases, however, did we address directly the question raised in this appeal—whether the trial court is constitutionally required, upon timely motion, to allow a defendant to show a need for psychiatric assistance in an *ex parte* hearing. In *State v. Phipps*, 331 N.C. 427, 418 S.E.2d 178, this Court considered whether a defendant's rights to due process of law, to effective assistance of counsel, and to reliable sentencing in a capital trial mandated that his motion for an independent fingerprint expert be heard *ex parte*. Under the facts of that case, we concluded: "Whereas an indigent defendant's access to the 'basic tools of an adequate defense' is a core requirement of a fundamentally fair trial, the need for an *ex parte* hearing on a motion for expert assistance is not." *Phipps*, 331 N.C. at 450, 418 S.E.2d at 190 (quoting *Ake*, 470 U.S. at 77, 84 L. Ed. 2d at 62). Although we stated in *Phipps* that "an *ex parte* hearing is not constitutionally required in every case," we acknowledged that "[t]here are strong reasons for conducting the hearing *ex parte*," *id.* at 451, 418 S.E.2d at 191, including the defendant's "right to obtain [the expert] assistance [necessary to assist in preparing his defense] without losing the opportunity to prepare the defense in secret." *Id.* at 449, 418 S.E.2d at 189 (quoting *Brooks v. State*, 259 Ga. 562, 565, 385 S.E.2d 81, 84 (1989)).

**STATE v. BALLARD**

[333 N.C. 515 (1993)]

When the indigent defendant is seeking the assistance of a psychiatric expert, the "strong reasons for conducting the hearing *ex parte*" are especially applicable. To expose to the State testimony and evidence supporting a defendant's request for an independent psychological evaluation and a psychiatrist's trial assistance lays bare his insanity or related defense strategy. A hearing open to the State necessarily impinges upon the defendant's right to the assistance of counsel and his privilege against self-incrimination. We hold that these constitutional rights and privileges, guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, entitle an indigent defendant to an *ex parte* hearing on his request for a psychiatric expert.

That the defendant in *Phipps* was requesting an *ex parte* hearing in order to apply for funds for a *fingerprint* expert distinguishes that case critically from the case now before us. The key difference between a hearing on the question of an indigent defendant's right to a fingerprint expert and one on the question of his right to a psychiatric expert is that the object of adversarial scrutiny is not mere physical evidence, but the defendant himself. The matter is not tactile and objective, but one of an intensely sensitive, personal nature. The public, adversarial nature of an open hearing is inevitably intimidating when the issue is the defendant's mental instability. This atmosphere can daunt the defendant's desire to put before the trial court all his evidence in support of his motion. This was plainly one reason defendant in this case failed to make a threshold showing of his need for an independent psychiatric expert: he was willing to present evidence to the trial court in chambers, but he was not willing to reveal it to the State.

Moreover, because the area of psychiatric expertise differs importantly from that of fingerprint analysis, defendant's constitutional rights are far less likely to be jeopardized by the presence of the prosecutor when defendant attempts a threshold showing for a fingerprint expert than when he offers evidence to support his need for a psychiatrist. *See State v. Moore*, 321 N.C. 327, 348-49, 364 S.E.2d 648, 659 (1988) (Mitchell, J., concurring) ("The issue of sanity is one about which experts can and frequently do disagree, even though all experts in the field have received years of intensive and highly specialized and demanding training. . . . The taking and analysis of fingerprints is largely a mechanical function, although admittedly one which requires some training and experience."). In *State v. Moore*, we held that the defendant

made the requisite threshold showing of specific necessity for a fingerprint expert by showing that (1) he would be unable to assess adequately the State's conclusion that a palm print found at the scene of the crime was his; (2) because there were no eyewitnesses to the crime, the print was critical evidence; and (3) defendant's mental retardation limited his abilities to communicate and reason and thus his ability to assist his counsel in his defense. *Moore*, 321 N.C. at 344-45, 364 S.E.2d at 653. None of these statements nor their underlying proof, including objective evidence of the defendant's mental retardation, would jeopardize the defendant's privilege against self-incrimination or violate his right to the effective assistance of counsel or the associated attorney-client privilege.

The privilege against self-incrimination, guaranteed by the Fifth and Fourteenth Amendments, is to be liberally construed. It applies not only to criminal prosecutions but to any proceeding sanctioned by law and to any investigation, litigious or not. *Allred v. Graves*, 261 N.C. 31, 35, 134 S.E.2d 186, 190 (1964) (quoting 98 C.J.S. *Witnesses* § 433, at 245 (1955) ). "[T]he protection afforded by the privilege against self-incrimination 'does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.' " *Trust Co. v. Grainger*, 42 N.C. App. 337, 339, 256 S.E.2d 500, 502, *cert. denied*, 298 N.C. 304, 259 S.E.2d 300 (1979) (quoting *Maness v. Meyers*, 419 U.S. 449, 461, 42 L. Ed. 2d 574, 585 (1975) ). The privilege against self-incrimination protects against real, not remote and speculative dangers, *Zicarelli v. Investigation Comm'n*, 406 U.S. 472, 478, 32 L. Ed. 2d 234, 240 (1972), *quoted in Trust Co. v. Grainger*, 42 N.C. App. at 339, 256 S.E.2d at 502, but a witness need not prove the hazard. To require him to do so would compel him to surrender the very protection the privilege is designed to guarantee. The privilege, to be sustained, need be evident only from the implications of the question and in the setting in which it is asked. These must show only that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L. Ed. 2d 1118, 1124 (1951), *quoted in Trust Co. v. Grainger*, 42 N.C. App. at 339-40, 256 S.E.2d at 502, *and in State v. Smith*, 13 N.C. App. 46, 52, 184 S.E.2d 906, 910 (1971).

STATE v. BALLARD

[333 N.C. 515 (1993)]

In the setting of a pre-trial hearing at which the defendant must make a threshold showing of need for psychiatric assistance or risk losing his opportunity to rely on the defense of insanity, what the defendant must divulge is compelled by the circumstances; his statements, therefore, are not voluntary testimony by which he would waive the privilege. *See Marshall v. United States*, 423 F.2d 1315, 1318 (10th Cir. 1970) ("Certainly the movant cannot be said to 'waive' disclosure of his case and his concomitant rights against self-incrimination and to due process by proceeding under subsection [3006A](e)."[1]). *Cf. Harrison v. U.S.*, 392 U.S. 219, 222, 20 L. Ed. 2d 1047, 1051 (1968) (a defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives); *State v. Glover*, 77 N.C. App. 418, 421, 250 S.E.2d 86, 89 (1978).

When a defendant has already been evaluated by a psychiatrist, who is to aid in the defendant's showing, the information at the psychiatrist's disposal may include "not only what [the patient's] words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame." *Taylor v. United States*, 222 F.2d 398, 401 (1955) (quoting Manfred F. Guttmacher and Henry Weihofen, *Psychiatry and the Law* 272 (1952)). When a defendant must make this showing absent such assistance, he somehow must prove to the court the instability of his mental state at the time of the crime, not only opening his thoughts and feelings to public and prosecutorial scrutiny, but also risking exposure of his role in potentially incriminating events in which such thoughts and feelings arose. Cross-examination by the State exacerbates the risk.

The Sixth Amendment right to the assistance of counsel presupposes the right to the *effective* assistance of counsel. *E.g., McMann v. Richardson*, 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14 (1970). The effective assistance of counsel requires adequate trial

---

1. 18 U.S.C. 3006A(e)(1) (1988) provides, in pertinent part:

Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

STATE v. BALLARD

[333 N.C. 515 (1993)]

preparation, including access to expert witnesses where appropriate. *See United States v. Wright*, 489 F.2d 1181, 1188 n.6 (D.C. Cir. 1973); *see also, e.g., Mason v. Arizona*, 504 F.2d 1345, 1351 (1974), *cert. denied*, 420 U.S. 936, 43 L. Ed. 2d 412 (1975) (due process right to effective assistance of counsel includes right to ancillary services necessary in the preparation of a defense). When insanity is the principal defense, access to psychiatric experts is essential to assist the attorney in presenting an adequate case. *United States v. Taylor*, 437 F.2d 371, 377 n.9 (4th Cir. 1971); *United States ex rel. Edney v. Smith*, 425 F. Supp. 1038, 1047 (1976), *aff'd*, 556 F.2d 556 (2d Cir.), *cert. denied*, 431 U.S. 958, 53 L. Ed. 2d 276 (1977); *see also Ake*, 470 U.S. at 82, 84 L. Ed. 2d at 65 (psychiatrist can assist in determining whether the insanity defense is viable, in presenting testimony, and in preparing for cross-examination of the State's psychiatric witnesses).

The attorney-client privilege, critical to the effective assistance of counsel, "rests on the theory that encouraging clients to make the fullest disclosure to their attorneys enables the latter to act more effectively, justly and expeditiously — benefits out-weighing the risks of truth-finding posed by barring full disclosure in court." *United States ex rel. Edney v. Smith*, 425 F. Supp. at 1046. A defendant's disclosures to his counsel cannot be used to furnish proof in the government's case. "Disclosures made to the attorney's expert should be equally unavailable, at least until he is placed on the witness stand. The attorney must be free to make an informed judgment with respect to the best course for the defense without the inhibition of creating a potential government witness." *Id.* at 1054.

The *ex parte* hearing procedure may be a critical component of the indigent defendant's right to expert psychiatric assistance — itself an indispensable tool to his defense once he has made a threshold showing of need. A hearing out of the presence of the prosecutor protects the defendant's insanity or diminished capacity defense strategy and enables him to put forward his best evidence in support of a motion that, if granted, might give him a reasonable chance of success, but if denied could devastate his defense. *See Ake*, 470 U.S. at 83, 84 L. Ed. 2d at 66. Only in the relative freedom of a nonadversarial atmosphere can the defense drop inhibitions regarding its strategies and put before the trial court all available evidence of a need for psychiatric assistance. Only in such an atmosphere can the defendant's privilege against self-incrimination

and his right to the effective assistance of counsel not be subject to potential violation by the presence of the State.

We thus hold that the trial court erred in denying defendant an *ex parte* hearing on his timely request for the appointment of a psychiatrist in violation of rights guaranteed him under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Because we cannot know what defendant would have presented in support of his request had he not been required to make his showing in open court,[2] we cannot say that the error was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). Defendant therefore is entitled to a new trial.

Because we award a new trial, we need not consider defendant's remaining assignments of error, which are unlikely to recur upon retrial.

NEW TRIAL.

---

2. We cannot expect defendant here to have made an offer of proof. "It could hardly be thought if the court would not hear the defendant outside of the presence of the government attorney that it would have heard an offer of proof with any greater privacy." *Holden v. United States*, 393 F.2d 276, 278 (1st Cir. 1968).