IN THE MATTER OF MARK MERRITT JONES

No. 9414SC71

(Filed 1 November 1994)

**Constitutional Law § 354 (NCI4th)— defendant in one case witness in another—refusal to answer questions on cross-examination—contempt—privilege against self-incrimination infringed**

The trial court's order holding appellant in contempt for refusal to answer two questions on cross-examination when he was a defense witness in a murder case and when appellant had a charge of first-degree murder pending against him infringed on his privilege against self-incrimination.

**IN RE JONES**

[116 N.C. App. 695 (1994)]

**Am Jur 2d, Criminal Law §§ 703, 937.**

**Supreme Court's views regarding proceedings to which Fifth Amendment's privilege against self-incrimination applies. 65 L. Ed. 2d 1306.**

Judge JOHN concurring in the result in part, dissenting in part.

Appeal by Mark Merritt Jones from order entered 20 September 1993 in Durham County Superior Court by Judge J.B. Allen, Jr. Heard in the Court of Appeals 6 October 1994.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Gayl M. Manthei, for the State.*

*Mark E. Edwards for appellant Mark Merritt Jones.*

GREENE, Judge.

Mark Merritt Jones (Mr. Jones) appeals from a 20 September 1993 order in Durham County Superior Court, holding him in contempt of court for a period of 60 days for refusal to answer two questions on cross-examination while testifying as a defense witness.

In the case of *State of North Carolina v. Ernest King,* Case No. 92 CRS 16778, 92 CRS 18804, the defense called Mr. Jones as a witness in Ernest King's murder trial to rebut the testimony of a prosecution witness who had testified to seeing Ernest King commit the murder. Before Mr. Jones testified, the following exchange took place between his counsel, Mr. Mark Edwards (Mr. Edwards) and the court:

MR. EDWARDS: Judge, I would ask the Court's indulgence in interposing any objections I feel may be appropriate based on Mr. Jones' fifth amendment right. I have discussed that with him and I think he understands what we are trying to avoid have happen here. He plans to testify about this event. I am just trying to make sure he doesn't say anything about his own pending charges.

COURT: All right. . . .

During cross-examination of Mr. Jones at Ernest King's trial, the following exchange took place between Mr. Jones, Mr. Edwards, the court, and Mr. Hardin for the State:

Q. Do you know somebody by the name of Deca?

A. No.

**IN RE JONES**

[116 N.C. App. 695 (1994)]

MR. EDWARDS: Your Honor, I object and I would advise Mr. Jones not to answer this question.

COURT: I believe he done answered it no. Didn't you say no?

. . . .

BY MR. HARDIN:

Q.   Well, isn't it true in the past you owed some New York boys money for drugs?

MR. EDWARDS: Your Honor, I object and I advise him not to answer the question.

. . . .

(Jury absent.)

MR. EDWARDS: . . . My objection goes back to the question right before that inquiring of whether Mr. Jones knew Deca. Deca is a street name for a person. He has been charged with murder. And I believe—

COURT: I think he answered that and said no.

MR. EDWARDS: Yes, he did.

COURT: Before I could rule on your objection.

MR. EDWARDS: Yes, sir. I think the line of inquiry the State is going into now I think regards their theory of prosecution on the murder case. I believe that the theory is that Mr. Jones owed Deca money and that was part of the reason or part of the motive for what happened so that's the reason why I am objecting to this. I'm afraid we're getting into the area of the facts of his particular case.

. . . .

MR. HARDIN: Mark Jones owed New York people money for drugs. Now, in terms of the specifics about Deca I believe that that was part of it. My contention would be that if he owes what are classified as the New York boys for drugs that that is relevant in terms of his motivation to lie for other New York boys that are part of that very broad group. That is the basis of the question.

. . . .

**IN RE JONES**

[116 N.C. App. 695 (1994)]

> COURT: All right. Outside the presence of the jury the Court does find . . . as a fact that prior to this stage of the trial there is evidence . . . that tends to show that Mark Jones who is the witness on the stand is charged with first degree murder and the DA's office will be prosecuting him as a capital offense case. . . . The Court does find as a fact that Mr. Hardin as an officer of the Court has stated in the presence of the Court and outside the presence of the jury that the district attorney's office has reason to believe and will tend to prove at the trial of State versus Mark Jones that Mark Jones did have—did owe some money for New York people for drugs and the Court does find that this is cross examination. . . . And I don't know what your answer is, Mr. Jones, but I am ordering you to answer that question when the jury comes back. If you fail to answer it you will be subject to contempt of court.

Mr. Jones refused to answer the question, and the court concluded "that this is contempt of court. The Court orders that he serve 30 days in jail. This sentence to begin at the expiration of any and all sentence he gets for the charges pending against him at this time." Subsequently, Mr. Jones refused to answer the question, "[i]sn't it true that you have got a reputation yourself for robbing drug dealers." The court stated

> Mr. Jones, I want to advise you outside the presence of the jury that I rule that that is a proper question for cross examination. You have testified that Eric Shaw, one of the state's witnesses, has a reputation for robbing drug dealers and robbing other people and I rule that this is a proper question and I will tell you that if you do not answer it it will be another 30 days.

After Mr. Jones refused to answer the question, the court found Mr. Jones in contempt of court and sentenced him to another 30 days in jail "to begin at the expiration of the 30 days on the question isn't it true that you owe New York people drug money."

The issue presented is whether the trial court's order holding Mr. Jones in contempt for refusal to answer two questions on cross-examination when he was a defense witness in a murder case and when Mr. Jones had a charge of first degree murder pending against him infringes on his privilege against self-incrimination.

The privilege against self-incrimination, which is guaranteed by the Fifth and Fourteenth Amendments, applies to both civil and criminal proceedings "wherever the answer might tend to subject to crim-

inal responsibility him who gives it," *McCarthy v. Arndstein*, 266 U.S. 34, 40, 69 L.Ed. 158, 161 (1924), and "should be liberally construed." *Allred v. Graves*, 261 N.C. 31, 35, 134 S.E.2d 186, 189 (1964). The privilege against self-incrimination extends "not only to answers that would in themselves support" a criminal conviction, but also "embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant" for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 95 L.Ed. 1118, 1124 (1951). This protection also extends to "evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Trust Co. v. Grainger*, 42 N.C. App. 337, 339, 256 S.E.2d 500, 502, *cert. denied*, 298 N.C. 304, 259 S.E.2d 300 (1979) (*quoting Maness v. Meyers*, 419 U.S. 449, 461, 42 L. Ed. 2d 574, 585 (1975)). "It is well established that the privilege protects against real dangers, not remote and speculative possibilities," *Zicarelli v. Investigation Comm'n*, 406 U.S. 472, 478, 32 L. Ed. 2d 234, 240 (1972), and "a witness may not arbitrarily refuse to testify without existence in fact of a real danger, it being for the court to determine whether that real danger exists." *Trust Co.*, 42 N.C. App. at 339, 256 S.E.2d at 502. In order to sustain the privilege, however, it "need be evident only from the implications of the question and in the setting in which it is asked." *State v. Ballard*, 333 N.C. 515, 520, 428 S.E.2d 178, 181, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 438 (1993).

> When the claim (of the privilege) is made, if it is immediately clear that an answer might tend to incriminate him, the claim should be sustained. Otherwise, the judge may, in the absence of the jury, inquire into the matter to the minimum extent necessary to determine that a truthful answer *might* tend to incriminate, and should deny the claim only if there is no such possibility.

*Trust Co.*, 42 N.C. App. at 341, 256 S.E.2d at 503 (*quoting* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 57 at 179-80).

Although a witness is entitled to assert the privilege as described above, the trial court nonetheless retains the discretion to strike the witness's direct testimony "in whole or in part" when the witness invokes the privilege on cross-examination in response to questions relating to the details of her direct examination. *State v. Ray*, 333 N.C. 463, 470, 444 S.E.2d 918, 923 (1994). The reason for this rule is "there may be a substantial danger of prejudice" to the party cross-examining the witness because asserting the privilege deprives, in some instances, the cross-examining party the right to test the truth

of the testimony offered by the witness asserting the privilege. *Id.* (little danger of prejudice exists where privilege invoked in response to questions relating to collateral matters).

In this case, the trial court, out of the presence of the jury, allowed Mr. Edwards to explain why an answer to the question "[i]sn't it true in the past you owed some New York boys money for drugs" could incriminate Mr. Jones. After Mr. Edwards explained that this question is linked to the prosecution's theory of motive in Mr. Jones' murder case and after hearing from Mr. Hardin the court found as a fact that "Mr. Hardin, as an officer of the Court has stated in the presence of the Court and outside the presence of the jury that the district attorney's office has reason to believe and will tend to prove at the trial of State versus Mark Jones that Mark Jones did have—did owe some money for New York people for drugs." Based on these circumstances, Mr. Jones' answer "would furnish a link in the chain of evidence needed to prosecute" him on his murder charge; therefore, it was reasonable for Mr. Jones to believe his answer "could be used against him in a criminal prosecution." For these reasons, we reverse the trial court's order holding Mr. Jones in contempt for refusing to answer the question "[i]sn't it true in the past you owe some New York boys money for drugs."

As to the second question, Mr. Jones contends that "[e]ven if he had no charges of any type pending against him, the question clearly carries an allegation of criminal activity and as such could reasonably be seen as incriminating if answered in the affirmative." We agree.

Although having a reputation for robbing drug dealers is not in and of itself a crime and would not, by itself, support a criminal conviction, under the liberal construction given the privilege against self-incrimination, it was reasonable for Mr. Jones to believe that his answer to the question "[i]sn't it true that you have got a reputation yourself for robbing drug dealers" "could be used against him in a criminal prosecution." In the event Mr. Jones were charged with any crime, evidence that he had previously answered in the affirmative the question "[i]sn't it true that you have got a reputation yourself for robbing drug dealers," would seriously undermine his credibility, and we are not prepared to say that "there is no . . . possibility" Mr. Jones' answer to this question would incriminate him. Mr. Jones was therefore entitled, based on the privilege against self-incrimination, to refuse to answer the two questions at issue in this case, and the trial court erred in holding Mr. Jones in contempt for refusal to answer.

Although the trial court may have been able to strike Mr. Jones' direct testimony, that is an issue not raised in this appeal, and we do not address it. For these reasons, the trial court's order holding Mr. Jones in contempt and sentencing him to 60 days imprisonment is

Reversed.

Judge WYNN concurs.

Judge JOHN concurs in the result in part and dissents in part.

Judge JOHN concurring in the result in part, dissenting in part.

I concur in the result of that portion of the majority opinion reversing the trial court's finding of contempt with respect to the question, "Well, isn't it true in the past you owed some New York boys money for drugs?" However, I believe it was proper to hold Mark Merritt Jones (Jones) in contempt for refusing to answer the question, "[i]sn't it true that you have got a reputation yourself for robbing drug dealers," and respectfully dissent from reversal of the trial court's action in that regard.

The majority, conceding that having a reputation for criminal activity is violative of no criminal statute, does not attempt to base its holding upon the theory that Jones' response to the question at issue would either have supported a criminal conviction or "furnish[ed] a link in the chain of evidence" against him in a criminal prosecution. Instead, although accurately stating the responsibility for deciding whether an *actual* potential for incrimination exists rests with the trial court, *Trust Co.*, 42 N.C. App. at 339, 256 S.E.2d at 502, the majority appears to find the perception of the witness, rather than the determination of the court, to be controlling ("it was reasonable for *Mr. Jones* to believe that his answer to the question . . . 'could be used against him in a criminal prosecution' "). I disagree with such reliance upon the witness' subjective belief. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified. . . ." *Hoffman v. United States*, 341 U.S. 479, 486, 95 L.Ed. 1118, 1124 (1951). Further, I find no basis for the able and experienced trial judge to have perceived the existence of a "real danger," *Trust Co.*, 42 N.C. App. at 339, 256 S.E.2d at 502, as opposed to a "remote and speculative danger," *Zicarelli v. Investigation Comm'n*, 406 U.S. at 478,

32 L.Ed.2d. at 240, for self-incrimination by Jones in the event of an affirmative answer.

The majority correctly writes that in order to sustain the privilege, the incriminating tendency of an answer must be evident " 'from the implications of the question and in the setting in which it is asked.' " Upon examination of the nature and setting of the question at issue, it appears that evidence of an affirmative response by Jones would under nearly all circumstances be *inadmissible*, and hence have no incriminating effect or tendency, in any subsequent criminal prosecution against him.

Rule 404 of the North Carolina Rules of Evidence prohibits introduction of evidence concerning a defendant's character to show conformity with the crime charged. N.C. Gen. Stat. § 8C-1, Rule 404(a) (1992). The sole pertinent exception to this general prohibition is occasioned by a defendant's introduction of a relevant "good" character trait; in that event, the prosecution *may* rebut with evidence of a countervailing "bad" character trait, N.C. Gen. Stat. § 8C-1, Rule 404(a)(1) (1992), that is directed at the specific "good" character trait offered by the defendant. *State v. Lynch*, 334 N.C. 402, 411, 432 S.E.2d 349, 353 (1993).

Accordingly, any testimony by Jones at the trial below that he indeed had a reputation for "robbing drug dealers" would be inadmissible in the prosecution's case-in-chief during any subsequent trial against him. Such evidence *might* be admissible *only* if the *prosecution elected* to present rebuttal evidence of this "bad" character trait to counter evidence of the corresponding "good" character trait of *not* having that reputation, should *defendant have elected* to present such evidence, and which rebuttal evidence of the prosecution the *trial judge determined* was relevant and *further determined* was not unfairly prejudicial under N.C.R. Evid. 401 and 403.

Moreover, contrary to the majority's assertion, I do not believe such evidence could be used to impeach Jones' credibility pursuant to Rule 608(a) if he elected to testify in his own behalf at such trial. Under the Rule, credibility may be attacked only with reputation evidence for truthfulness or untruthfulness. N.C. Gen. Stat. § 8C-1, Rule 608(a)(1) (1992).

In sum, neither the record *sub judice* nor the testimony presented at the *voir dire* below suggest any reasonable basis for the trial court to discern the potential occurrence of any of the eventualities, much less all, which *might* lead to the introduction of evidence defendant

had a "reputation for robbing drug dealers" at some subsequent criminal prosecution. For it to have done so would have been rank speculation as opposed to determination of a "real danger" of incrimination.

I therefore vote to affirm the finding of Jones in contempt based upon his refusal to answer the question concerning his reputation for "robbing drug dealers."