STATE OF NORTH CAROLINA v. EDDIE HATCHER

No. COA02-270

(Filed 4 March 2003)

**1. Jury— voir dire—past dealings with district attorney— criminal record**

The trial court did not abuse its discretion in a first-degree murder case by failing to make further inquiry into a juror's past dealings with the district attorney and to find out whether that juror failed to honestly answer a material question on voir dire regarding whether she had come to court about anything else, because: (1) the juror knew the district attorney from a prior murder trial in which she testified, and the juror stated there was nothing about that case that would keep her from being a fair and impartial juror in the present case; (2) defendant's assertion that there may have been a deal between the juror and the State to induce the juror to testify in the previous murder trial which could have led to favoritism for the State in this case was never explored by defendant during voir dire; and (3) it was not shown that the juror's answer about not coming to court was not truthful even though she had been charged with previous misdemeanors, and defendant did not question the juror about her criminal record or dealings with the State.

**2. Constitutional Law— right to confrontation—witness pled Fifth Amendment**

The trial court did not violate defendant's constitutional right to confrontation in a first-degree murder case by allowing a witness for the State to plead the Fifth Amendment during cross-examination regarding the witness's alleged murder of another

**STATE v. HATCHER**

[156 N.C. App. 391 (2003)]

victim in an unrelated matter, because: (1) the question did not ask about the charge against the witness, but sought to elicit specific and possibly incriminating facts about a murder for which the witness had yet to be tried and which was completely unrelated to this case; and (2) defendant was not prevented from exploring the issues of bias and motive to fabricate based on the witness's agreement with the State since defendant cross-examined the witness and the witness testified extensively regarding the agreement he had reached with the State.

**3. Discovery— exculpatory evidence—handwritten notes**

The trial court in a first-degree murder case did not allow the State to improperly withhold exculpatory evidence including certain handwritten notes in the record that a detective allegedly made following an interview with the girlfriend of the victim indicating the victim had been threatened by two other individuals shortly before his death, because: (1) the notes do not indicate who wrote them and when or even which particular witness made the statement regarding the threats; and (2) there is nothing in the record that would show when the notes were turned over to defendant.

Appeal by defendant from judgment dated 23 May 2001 by Judge Jerry Cash Martin in Robeson County Superior Court. Heard in the Court of Appeals 21 January 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Ellen B. Scouten, for the State.*

*Eddie Hatcher defendant appellant pro se.*

BRYANT, Judge.

Eddie Hatcher (defendant) appeals a judgment dated 23 May 2001 entered consistent with a jury verdict finding him guilty of first-degree murder for a drive-by shooting into an occupied residence that killed one person and injured another. Although defendant's brief to this Court includes several appellate rule violations, we invoke Rule 2 of the North Carolina Appellate Rules to reach the merits of defendant's appeal. *See* N.C.R. App. P. 2 (allowing for suspension of rules). The facts pertinent to our analysis are set out below.

The issues we address in this appeal are whether: (I) the trial court abused its discretion by not making further inquiry into a

juror's past dealings with the district attorney and whether that juror failed to honestly answer a material question on voir dire; (II) the trial court erred in allowing a witness for the State to plead the Fifth Amendment during cross-examination; and (III) the State improperly withheld exculpatory evidence.

I

[1] Defendant takes issue with juror Yolanda Barnwell's (Barnwell) voir dire testimony. During voir dire, the trial court asked Barnwell if she knew or had any previous contact with the district attorney in this case or any member of his staff. Barnwell answered "I know him" and explained it was "[f]rom a while ago [when she] had to testify [i]n a murder case of [her] best friend" approximately a year before defendant's trial. When the trial court inquired whether anything about that case would keep her from being a fair and impartial juror, Barnwell said "no." During the State's voir dire of Barnwell, the following exchange took place:

> THE STATE:  You and I are acquainted because you testified as a witness in a murder trial about a year ago.
>
> BARNWELL:  Uh-huh.
>
> . . . .
>
> THE STATE:  Is there anything about that experience that you believe would prevent you from being fair in this case?
>
> BARNWELL:  No, sir.
>
> . . . .
>
> THE STATE:  Other than when you testified in that other case, have you ever had to come to court about anything else?
>
> BARNWELL:  No.

The record in this case includes a criminal record check on Barnwell. That document indicates Barnwell pled guilty to several traffic misdemeanors and infractions. It also shows she had been charged with possession with intent to sell and deliver cocaine, a felony, on 7 July 1999, but the charge had been dismissed by the State on 19 August 1999.

Defendant argues in his brief to this Court that:

> when the trial judge was made aware by Juror Barnwell that she had served as a State's witness[,] his experience would surely

[have told] him that it is customary practice for district attorney[s] to grant favors and deals to persons testifying on behalf of the State and his experience should have led him to make further inquiry in that area.

We disagree.

"Due process requires that a defendant have 'a panel of impartial, indifferent jurors.' " *State v. Williams*, 330 N.C. 579, 583, 411 S.E.2d 814, 817 (1992) (citation omitted). "The nature and extent of the inquiry made of prospective jurors on voir dire ordinarily rests within the sound discretion of the trial court." *State v. Hill*, 331 N.C. 387, 404, 417 S.E.2d 765, 772 (1992). Thus, " 'in order to establish reversible error, a defendant must show prejudice in addition to a clear abuse of discretion on the part of the trial court.' " *State v. Meyer*, 353 N.C. 92, 109, 540 S.E.2d 1, 11 (2000) (citation omitted).

In this case, Barnwell admitted to knowing the district attorney from a prior murder trial in which she testified. Barnwell also stated there was nothing about that case that would keep her from being a fair and impartial juror in the present proceeding. As such, this testimony raised absolutely no red flags the trial court should have acted upon. Moreover, defendant's assertion that there may have been a deal between Barnwell and the State to induce her to testify in the previous murder trial, which could have led to favoritism for the State in this case, was never explored by defendant during voir dire. Thus, based on the exchange above, we conclude the trial court did not abuse its discretion in failing to make further inquiry into Barnwell's contact with the district attorney.

Defendant also contends Barnwell failed to honestly answer a material question, thereby concealing her criminal record and raising issues of her possible bias in favor of the State. The statement on which defendant bases his argument is Barnwell's denial of ever having had to "come to court about anything else." Defendant claims this statement must be false because Barnwell had pled guilty to several traffic misdemeanors and infractions and had been charged with possession with intent to sell and deliver cocaine. Defendant further argues that because the State dismissed the 1999 felony charge against Barnwell, "there was surely a sense of allegiance and debt felt by [Barnwell] for the district attorney."

A new trial based upon a misrepresentation by a juror during voir dire will not be granted unless the defendant shows the following:

"(1) the juror concealed material information during voir dire; (2) the moving party exercised due diligence during voir dire to uncover the information; and (3) the juror demonstrated actual bias or bias implied as a matter of law[1] that prejudiced the moving party."

*State v. Chavis*, 134 N.C. App. 546, 552, 518 S.E.2d 241, 246 (1999) (quoting *Buckom*, 126 N.C. App. at 380-81, 485 S.E.2d at 327).

In this case, defendant has not demonstrated any of these three factors. Because Barnwell's infractions and traffic misdemeanors could have been settled by an attorney or by payment of a fine, they did not necessarily require her physical presence in court. In addition, the cocaine charge was dismissed a month after Barnwell had been charged, and there is no indication from the record on appeal that she was arrested or had to appear in court at any time on that charge. Thus, it has not been shown that Barnwell's answer was not truthful. Moreover, defendant did not question Barnwell about her record or dealings with the State. The only questions posed by defendant to Barnwell related to her knowledge of someone acquainted with the defense attorneys. As such, defendant did not exercise due diligence to uncover the information he now presents to this Court. *See id.* Finally, defendant's allegations of Barnwell's bias based on her record and alleged dealings with the district attorney are completely hypothetical. Because defendant has failed to present a sufficient showing of juror bias, this assignment of error is overruled.

## II

[2] Defendant next argues the trial court denied him the right of confrontation by allowing a witness for the State to plead the Fifth Amendment during cross-examination.

At trial, the State called Phillip Quinn Smith (Smith) to testify about his contact with defendant on the day of the shooting. On cross-examination, Smith testified he had been charged but not

---

1. The presence of bias implied as a matter of law may be determined from examination of the totality of the circumstances. This would incorporate, but not necessarily be limited to, (1) the nature of the juror's misrepresentation, including whether a reasonable juror in the same or similar circumstance could or might reasonably have responded as did the juror in question, (2) the conduct of the juror, including whether the misrepresentation was intentional or inadvertent, and (3) whether the defendant would have been entitled to a challenge for cause had the misrepresentation not been made.

*State v. Buckom*, 126 N.C. App. 368, 382, 485 S.E.2d 319, 328 (1997).

yet tried in unrelated and separate matters for the first-degree murder of a Kenneth Bell and for firing into occupied property. The murder indictment stated Smith had "unlawfully, willfully, and feloniously . . . , with malice [a]forethought, kill[ed] and murder[ed] Kenneth [] Bell." When questioned by defendant, "And it[ is] true, is it not, that you were charged with killing Mr. Bell, shooting him to death, a single gunshot wound to his head with a high-caliber weapon," Smith invoked his Fifth Amendment right to silence. Defendant objected and moved for a mistrial. The trial court denied the motion and granted Smith's request to invoke his Fifth Amendment right. Defendant then asked Smith if he had reached any agreement with the State with respect to the charges pending against him. Smith replied the State had agreed not to try him capitally and to stipulate to a statutory mitigating factor in the event he was convicted of any offense other than first-degree murder.

The privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments "applies to both civil and criminal proceedings 'wherever the answer might tend to subject to criminal responsibility him who gives it,' and 'should be liberally construed.' " *In re Jones*, 116 N.C. App. 695, 698-99, 449 S.E.2d 221, 223 (1994) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 69 L. Ed. 158, 161 (1924) and *Allred v. Graves*, 261 N.C. 31, 35, 134 S.E.2d 186, 189 (1964)). "The privilege against self-incrimination extends 'not only to answers that would in themselves support' a criminal conviction, but also 'embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant' for a crime." *Id.* at 699, 449 S.E.2d at 223 (quoting *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 1124 (1951)). This protection further covers "evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Trust Co. v. Grainger*, 42 N.C. App. 337, 339, 256 S.E.2d 500, 502 (1979). The privilege is available to everyone, defendants and witnesses alike. *See Jones*, 116 N.C. App. at 699, 449 S.E.2d at 223.

In this case, Smith refused to answer defendant's question whether he had been "charged with killing Mr. Bell, shooting him to death, a single gunshot wound to his head with a high-caliber weapon." As posed, this question does not ask about the *charge* against Smith, a question Smith would have been required to and did in fact answer earlier, but seeks to elicit specific and possibly incriminating facts about a murder for which Smith was yet to be tried and which was completely unrelated to this case. As such, Smith was en-

titled to invoke his Fifth Amendment privilege. *See id.*; *State v. Eason*, 328 N.C. 409, 419, 402 S.E.2d 809, 813 (1991) (witness had a valid claim of privilege and the trial court did not err in denying the defendant's motion to compel her to testify where the witness was being asked to testify about the very incident which led to her conviction and for which she still faced trial de novo). Defendant nevertheless contends he was prejudiced because the invocation of the privilege prevented him from exploring the issue of bias and motive to fabricate based on Smith's agreement with the State. This argument is without merit as the trial transcript clearly indicates that defendant cross-examined and Smith testified extensively regarding the agreement he had reached with the State. Accordingly, this assignment of error is overruled.

### III

**[3]** Defendant also contends the State improperly withheld exculpatory evidence. Defendant refers to certain handwritten notes in the record he contends Detective Donald Britt made following an interview with the girlfriend of the deceased, which indicate the deceased had been threatened by two other individuals shortly before his death and which defendant claims he never received before or during the trial. Having reviewed the notes at issue, we observe that they do not indicate who wrote them and when or even which particular witness made the statement regarding the threats. Furthermore, there is nothing in the record that would show at which time (before, during, or after trial) the notes were turned over to defendant. Without such information, we have no basis to review this assignment of error. Accordingly, it is also overruled.

We have thoroughly reviewed defendant's remaining contentions in his brief to this Court and find them to be without merit.

No error.

Judges WYNN and STEELMAN concur.