## Richmond.

### Temple v. The Commonwealth.

### Absent, *Anderson*, J.

1. The act of criminal procedure ch. 10, § 20 (Code of 1873, ch. 195, § 20), which provides that a witness giving evidence in a prosecution for unlawful gaming shall never be proceeded against for any offence of unlawful gaming committed by him at the time and place indicated in such prosecution, does not apply to a prosecution for managing and conducting a lottery ; and a witness cannot be required to testify in such a case if he will thereby criminate himself.

2. The fact that the witness testified before the grand jury, and that it was on his testimony that the indictment was found, will not deprive him of his privilege to decline to testify on the trial of the party indicted.

This case was in this court by writ of error to a judgment of the hustings court of the city of Richmond. The case is fully stated by Judge *Christian* in his opinion.

*W. W. Gordon* and *Wise & Hobson,* for the plaintiff in error.

*The Attorney-General,* for the Commonwealth.

CHRISTIAN, J. This is a writ of error to a judgment of the hustings court of the city of Richmond, which judgment imposed a fine of $50 on the plaintiff in error, and committed him to the jail of the city of Richmond for twenty days; said fine and imprisonment being imposed by said hustings court for contempt of the plaintiff in error, for refusing to answer a question propounded to him by the Commonwealth's attorney, upon the trial of a cause

in which he had been summoned as a witness for the Commonwealth, and upon whose evidence an indictment had been found by the grand jury against one Andrew J. Berry.

The record shows that Berry was indicted in the said hustings court under the 13 § of chap. 9 of the new criminal procedure, which makes it a penal offence for any person to "set up, or promote, or be concerned in managing or drawing a lottery," &c. The indictment contained two counts, one charging that the prisoner, on the 14th of March, 1881, in said city, "unlawfully did set up, and promote, and was concerned in managing and drawing a certain lottery for the division of money and other things of value by chance and lot, a particular description of which said lottery the grand jurors cannot give, as they have no means of knowledge"; the second count charged that the said Berry, "on the 14th of March, 1881, at the city aforesaid, did unlawfully sell a lottery ticket in a certain lottery for the division of money and other things of value, a particular description of which said lottery, the grand jurors cannot give, as they have no means of knowledge."

To this indictment Berry pleaded "not guilty," and upon this issue, the plaintiff in error Temple, upon whose evidence the grand jury had found a true bill, refused to testify, upon the ground that by so doing he would criminate himself; and for this refusal to testify as a witness in the cause the hustings court imposed upon him a fine of fifty dollars, and sent him to jail for a period of twenty days, as being in contempt of said court.

The bill of exceptions, signed by the judge of the said hustings court certifies, that the first witness called for the Commonwealth was Douglas L. Temple, who, being duly sworn, was asked by Mr. S. B. Witt, Commonwealth's attorney, to state all he knew to connect the prisoner Andrew J. Berry with the charge set forth in the indictment; and thereupon the witness replied : " I went into the grand

jury room without having consulted counsel. I have now had advice, and decline to answer, because I will criminate myself."

In answer to other questions, the witness stated that he was yesterday in his place of business in what is known as Ram Cat alley, when Sergeant Robert N. Thomas, of the Richmond city police, came in and asked for him; that he told him he was the man, and thereupon Sergeant Thomas told him he wanted him to go with him; that Mr. Witt wanted him at the courthouse; and thereupon Sergeant Thomas took up a book lying on a table in witness' office and bade him come along with him; that Sergeant Thomas exhibited no warrant or summons, but that witness understood Sergeant Thomas to arrest him, and believed himself to be under arrest from that time until the present.

The witness further stated that soon after his arrival at the courthouse he went into the grand jury room and answered certain questions propounded to him by the grand jury; that after he returned to the courtroom from the grand jury room Mr. Witt, Commonwealth's attorney, asked that bail be required of witness under ch. 205, § 4, of the Code of Virginia; and thereupon the court required witness to give bail for three hundred dollars; but that he was unable to give it and was sent to jail, where he has since remained, and that he is still in custody; that he consulted counsel yesterday afternoon at the city jail, and was advised to decline to answer, as he might criminate himself. And thereupon the Commonwealth's attorney prayed the court to compel the witness to answer his said question; and the prisoner by his counsel prayed the court the contrary; and after argument by counsel, the court asked the Commonwealth's attorney whether any prosecution was pending against the witness in this court, or whether it was the intention of the Commonwealth's attorney to institute any prosecution against him for being concerned in a lottery;

to both of which questions the Commonwealth's attorney replied in the negative; and thereupon the court decided that the witness must answer the question. And the witness still declining to answer the question, the court imposed a fine of fifty dollars and twenty days' confinement in jail upon the witness for his contempt. To which ruling of the court the witness by his counsel excepted, and prayed that his exception be signed, sealed and enrolled, which was accordingly done."

Upon these facts the hustings court adjudged the witness (the plaintiff in error here) guilty of a contempt and imposed on him a fine of fifty dollars, and ordered him to be imprisoned in the city jail for twenty days.

To this judgment of the hustings court a writ of error was awarded by one of the judges of this court.

The question we have to decide is, whether upon the facts fully set out in the above bill of exceptions the hustings court was justified in requiring the witness to answer, and upon his failure to do so, to fine and imprison him. I think clearly not.

The privilege accorded to every citizen to refuse to answer a question which *may* tend to criminate himself, is one guaranteed by the constitution. It is a right of which neither legislatures nor courts can deprive him.

To make such a right certain and not subject to the mutation of legislative will, or the hazard of judicial discretion, this State, ever foremost in proclaiming principles of personal liberty and security, and in providing safeguards to individual rights, placed this right under the ægis of her constitution.

The 8th section of the Bill of Rights, which was intended to secure, and does secure, all personal rights of a party charged with criminal offences, provides as follows:

"That in all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation,

to be confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty; NOR CAN HE BE COMPELLED TO GIVE EVIDENCE AGAINST HIMSELF; that no man be deprived of his liberty, except by the law of the land or the judgment of his peers."

This section of the bill of rights, in the eloquent language of the late lamented Judge Bouldin, "was framed for the protection of the citizen, and announced great principles of individual right to be secured to the people of Virginia and their posterity forever." * * * "It was its purpose to proclaim and render inviolable a great practical individual right, to declare as part of the organic law that no man should anywhere, before any tribunal, in any proceeding, be compelled to give evidence tending to criminate himself, either in that or any other proceeding." *Cullen's case*, 24 Gratt. 624.

The fact stated in the bill of exceptions that Temple had testified before the grand jury, and that the indictment was found upon his testimony, does not alter the case. The same point was made in *Cullen's case, supra*, where Cullen had testified before a coroner's inquest. Judge Bouldin, in meeting this view, said: "But it has been argued that this is not a proper case to recognize the privilege, because the witness has already made elsewhere a full and voluntary disclosure of the facts, and that nothing he could now say would do more to criminate him than has been done already by that statement. Conceding this to be so, we are by no means prepared to say that it answers the claim of the witness to his privilege. If, as we have held to be the case, a full disclosure of the facts might tend to criminate the witness, we cannot see how that tendency is at all removed by showing that the witness had elsewhere made a statement tending to criminate him. The question before us is

not what the witness may have said elsewhere, but whether, when it is apparent that a disclosure from him *may tend* to criminate him, he shall now, in a pending trial, be compelled to make that disclosure, although he claims his constitutional right of refusal. We do not see that his statements elsewhere have anything to do with the question."

These sound views of Judge Bouldin may be applied *verbatim et literatim* to the case before us. The only difference is that in *Cullen's case* the disclosure was made before a coroner's inquest, and in the other before a grand jury. In principle there is no difference between the two cases. So I think there is nothing in the fact that Temple had already testified before the grand jury—and especially in view of the circumstances under which he was brought before the grand jury, and in view of the further fact, that after he was in jail, held as a witness, he consulted counsel, who advised him that his testimony in court would criminate himself.

I am further of opinion, that the rights of the witness are not at all affected by the statement contained in the bill of exceptions to the following effect: "the court asked the Commonwealth's attorney whether any prosecution was pending against the witness in this court, or whether it was the intention of the Commonwealth's attorney to institute any prosecution against him for being concerned in a lottery, to both which questions the Commonwealth's attorney replied in the negative."

No implied suggestion by the court, nor any implied or positive promise by the Commonwealth's attorney could operate as an indemnity to the witness that he would not be further prosecuted. He had a right to stand upon his constitutional privilege, and not to trust to the chances of a further prosecution. The court, of course, could offer him no such indemnity. Nor could the Commonwealth's attorney, for he might die, or be removed, or resign, and his

successor might see fit to institute a prosecution against him. Or whether he did or not, a grand jury, without the advice or consent of the Commonwealth's attorney, might institute such prosecution.

A man, having a privilege secured to him by the constitution, cannot be required to waive that high constitutional right upon the suggestion either by the court, who had no right to make it, or by the Commonwealth's attorney, who is powerless to redeem his pledge, that *peradventure* no prosecution would be instituted against him. He has a right to stand upon his constitutional privilege, and to remain silent whenever any question is asked him the answer to which *may tend to criminate himself.*

It is argued, however, that it is a question within the discretion of the court, always, whether the witness shall be compelled to answer, and that the court must judge in the case before it·whether the witness will criminate himself, and that the witness is not to judge of that fact for himself.

Upon this question there has been some conflict in the English decisions. But in this country the great weight of authority is in favor of the rule, that where the witness on oath declares his belief that the answer to the question would criminate, or tend to criminate him, the court cannot compel him to answer, unless it is *perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer *cannot possibly* have such tendency. (See 21 Amer. Dec., *Fries* v. *Brugler*, pp. 52, 57, and cases there cited.)

In the famous ·Burr trial Chief Justice Marshall said: "It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact, which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict

him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what his answer will be; and if he say, on oath, that he cannot answer without accusing himself, he cannot be compelled to answer."

In the case of *The People* v. *Mather*, Judge Marcy said: "If the witness thinks the answer *may* in any way criminate him, the court must allow his privilege without exacting from him to explain how he would be criminated by the answer which the truth may oblige him to give. If the witness was obliged to show how the effect is produced, the protection would at once be annihilated." 4 Wend. 229, 254; see also *The Queen* v. *Boyes*, 101 Eng. C. L. R. 309, 329.

I think upon the authority of these decisions it may be safely said that wherever a party on oath declares that the answer to the question propounded to him will criminate himself, the court must accept that answer as true, and as making a *prima facie* case in which the witness must be excused, unless there is something in the circumstances of the particular case which makes it appear either that the witness contumaciously refuses to answer, or where it appears that from all the circumstances he is clearly mistaken as to any possibility of his future prosecution. The witness ought not in any case be compelled to answer after declaring on oath that such answer may criminate himself, especially after he has taken the advice of counsel, unless it clearly appears to the court that he is mistaken.

In the case before us it appears that the plaintiff in error, while held in jail as a witness, consulted with counsel, who advised him that he would criminate himself if he testified in the case against Berry and gave the same testimony which he had given before the grand jury.

The court might well have inquired into the fact whether he had actually received such advice of counsel, or if it believed that such counsel was disreputable, and that the

advice was given simply to protect the offender or to shield a contumacious or bribed witness—all these matters might have been properly inquired into by the court.

But here we have a case where a witness states that he has consulted counsel, and that that counsel has advised him not to answer the question propounded to him because it would criminate himself; and there is not a suggestion in the record that there was any motive either in the witness or in his counsel other than to raise the legal question whether he could be compelled to testify in a case where such testimony might tend to criminate the witness.

I think upon the facts certified in the record, and the authorities before cited, that the hustings court, under the circumstances of this case, had no right to compel the witness to answer the question propounded to him, and to fine and imprison him for failure to answer such question.

It is argued, however, and no doubt this was the view taken by the learned judge of the hustings court, that the witness in this case was protected by indemnity provided in the 20th § of ch. 10 of the Criminal Procedure, which is in these words: "Nor shall any witness giving evidence, either before the grand jury or the court in such prosecution, be ever proceeded against for any offence of *unlawful gaming* committed by him at the time and place indicated in such prosecution; but such witness shall be compelled to testify, and for refusing to answer questions, may by the court be fined a sum not exceeding five hundred dollars, and be imprisoned for a term not exceeding six months."

The prosecution in this case, it must be remembered, was against a person who was charged with setting up and promoting or concerned in managing or drawing a lottery.

If a lottery can be considered under our statutes *unlawful gaming*, there would be much force in the position taken by the Attorney-General defending the position of the hustings court that the 20th § of ch. 10 of the Criminal Pro-

cedure furnished a complete indemnity to the witness Temple.

It is true that in common parlance the word *lottery* may mean a game. But the legislature has plainly drawn a distinction between lotteries and unlawful gaming. Both are offences against the law, and both are offences against public policy. But they are separated in different sections of the criminal code, and the punishment prescribed for these offences is different. In the enumeration of unlawful games lotteries are left out. And to show conclusively that the legislature made this distinction between unlawful gaming and lotteries, it is only necessary to refer to the 22d section of chapter 9, which provides that "all laws for suppressing gaming, lotteries, and unchartered banks, and the circulation of bank notes for less than five dollars shall be construed as remedial."

I think a reference to these statutes plainly shows that whatever may be the meaning of the word *lottery* in common parlance, or in a dictionary sense of terms, the legislature, by separating the offence of "setting up or promoting a lottery" from games denounced by the statute as unlawful, plainly intended to make a distinction between unlawful gaming and lotteries.

I think, therefore, it is plain that the section above quoted, which affords indemnity to a witness who testifies in a case of unlawful gaming, does not apply to a prosecution under the statute which prohibits the setting up, promoting, and managing a lottery.

Upon the whole case, I am of opinion that the hustings court of the city of Richmond was in error in requiring the witness Temple to testify in the prosecution against Berry, and for his refusal, to impose upon him a fine and imprisonment. I think, therefore, that the judgment of the said hustings court should be reversed.

STAPLES, J, I concur with Judge *Christian* in the opinion that the indemnity afforded the witness in prosecutions for gaming, by the 20th section of chapter 195, Code of 1873, is not extended to witnesses in prosecutions for violation of the laws against lottery dealing. Upon that ground I think the witness in this case would not be compelled to answer the question asked him by the attorney for the Commonwealth.

If this were a prosecution for unlawful gaming, as defined by our statutes, I think the witness would be bound to testify, for he is fully protected by the provisions of the 20th section already adverted to. It is very true I concurred with the majority of the court in *Cullen's case*, 24 Gratt. 624, but the question, whether the legislature may not compel the witness to answer by affording him ample indemnity, was left undecided in that case—p. 635. I wish further to say, that subsequent reflection has led me to entertain considerable doubt of the correctness of a good deal that was said in *Cullen's case;* and if the occasion occurs, I feel myself at liberty to reconsider the whole subject.

Upon the other questions discussed by Judge *Christian*—how far the answer of the witness is conclusive upon the court—there is a great diversity of decision. Upon this subject I am not prepared to express any decided opinion; and as we are not required by anything in the present case to lay down general rules, I am not willing to attempt it. No suggestion is made here that the witness was contumacious, or that his answer would not tend to criminate him.

The learned judge of the hustings court doubtless thought the witness protected by the statute, or by the assurance of the Commonwealth's attorney. Whilst I am compelled to differ with him, I think he was right in having the question settled by the appellate court.

Temple v. The Commonwealth.

BURKS, J.  In the view I take, it is not necessary in the case before us to decide whether the construction of the 8th (now 10th) section of the Virginia bill of rights by this court in *Cullen's case* should be adhered to in all its length and breadth.  Passing by, therefore, what is said by Judge Christian in reference to that case, and the doctrines supposed to be affirmed by it, I concur in the residue of his opinion, and in the judgment of reversal to be entered.

The judgment was as follows :

This day came again as well the plaintiff in error by his counsel, as the Attorney-General on behalf of the Commonwealth, and the court, having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the plaintiff in error under the law had the right to decline to answer the interrogatory propounded to him by the attorney for the Commonwealth of the said hustings court of the city of Richmond, and was therefore guilty of no contempt of court in so declining, and that the judgment of the said hustings court is erroneous.

Therefore, it is considered by the court here, that the said judgment be reversed and annulled, and that this cause be remanded to the said hustings court, with instructions to allow the plaintiff in error his privilege of refusal to answer, if again claimed, on the trial of the party accused. Which is ordered to be certified to the said hustings court of the city of Richmond.

JUDGMENT REVERSED.