905 A.2d 315

**Jeffrey SMITH**

v.

**STATE of Maryland.**

**No. 128, Sept. Term, 2005.**

Court of Appeals of Maryland.

Aug. 3, 2006.

Matthew H. Solomson, Assigned Public Defender (Arnold & Porter LLP, on brief) of Washington, D.C., for petitioner

Brian S. Kleinbord, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief) of Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

This case presents us with the task of determining whether a witness is deprived of his Sixth Amendment right to effective assistance of counsel when he is held in contempt based, in part, on an unauthorized disclosure of privileged information by his counsel. We hold that the witness in this case,

Jeffrey Smith, received ineffective assistance of counsel when his attorney disclosed the nature of his advice to Smith and his opinion regarding the application of the Fifth Amendment.

Smith also seeks review of the trial judge's assessment of the merits of his Fifth Amendment claim and the procedures used by the trial judge to impose sanctions for the direct criminal contempt. We conclude that the trial judge committed multiple errors with respect to her determination that Smith did not have a valid basis for asserting his Fifth Amendment right against self-incrimination and the procedures that she adhered to when she imposed sanctions for Smith's contempt.

### Background

On November 7, 2003, while the Petitioner, Jeffrey Smith, was serving a sentence for several drug violations, an Assistant State's Attorney in Baltimore City had Smith brought from prison to court to testify as a prosecution witness in a case in the Circuit Court for Baltimore City, *State v. Morgan, et al.*, case number 102235018–21. When Smith was called to the stand, the following colloquy occurred:

[THE STATE]: Mr. Smith, do you live in Baltimore City?

[SMITH]: Yes.

[THE STATE]: How long have you lived in Baltimore City?

[SMITH]: About thirteen, fourteen years.

[THE STATE]: And in what district do you live in?

[SMITH]: Eastern.

[THE STATE]: Eastern District?

[SMITH]: Yes.

[THE STATE]: Which part of the Eastern District?

[SMITH]: East Side.

[THE STATE]: I understand that. Can you tell us the street?

[SMITH]: No, I can't.

[THE STATE]: Are you refusing to answer?

[SMITH]: Yes.

[THE STATE]: Are you familiar with the 27 hundred block of East Monument Street?

[SMITH]: Yes.

[THE STATE]: Have you been there before?

[SMITH]: Yes.

[THE STATE]: How often?

[SMITH]: Excuse me, I'm not even with this program. I would like to plead the 5th.[1] I don't want to talk.

[THE COURT]: Mr. Smith, there is no Fifth Amendment—how often have you been to the 27 hundred block of East Monument Street?

[SMITH]: If I live there, how many times can I say I been there?

[THE COURT]: So, you live in the 27 hundred block of East Monument Street.

Next question.

[THE STATE]: What is your date of birth? What's your date of birth?

[SMITH]: I'm exercising my right to remain silent.

[THE COURT]: There is no Fifth Amendment privilege to your date of birth, Mr. Smith.

[SMITH]: I want to remain silent, period.

The trial judge stopped the proceedings and sent the jury to lunch, at which time the following discussion ensued:

[DEFENSE COUNSEL]: He's not charged in this case. The question is, does he have a legitimate Fifth Amendment privilege with regard to this matter?

[THE STATE]: No, he does not. He has never been a suspect or has ever been charged.

---

1. The Fifth Amendment to the United States Constitution provides in pertinent part:

No person shall ... be compelled in any criminal case to be a witness against himself.

[THE COURT]: That's your view. It's his rights, not your rights. Unless you give him immunity, which guarantees him he's not going to be prosecuted—

[THE STATE]: I'm in no position to do that. But the State believes he is not implicating himself.

[THE COURT]: You may not believe that, but it is his rights.

The trial judge, *sua sponte*, permitted the prosecutor to meet with Smith to discuss the Fifth Amendment issue. After a lunch break, the Circuit Court reconvened:

[THE COURT]: I want to put on the record that over the luncheon hour, the Court contacted the Office of the Public Defender and asked ..., who I understand is in charge today, if he could send counsel over and he graciously agreed ...

[Speaking to Counsel for Smith], have you had an opportunity to speak to Mr. Smith?

[SMITH'S COUNSEL]: Yes.

[THE COURT]: Is Mr. Smith ready to invoke his Fifth Amendment privilege?

[SMITH'S COUNSEL]: Yes. Also, prior to speaking with Mr. Smith, I spoke with counsel for the State ... to get a background on what the case was all about and what Mr. Smith's potential involvement might be regarding his Fifth Amendment privilege and, **as far as I can determine, after speaking with [the prosecutor] and speaking with Mr. Smith, I have advised him that I could not find any constitutional basis for his pleading the Fifth Amendment in this case.** I also advised him of the potential consequences of his continuing to make that plea and disobey any orders from the Court to testify in spite of his wishes.

(Emphasis added).

The trial judge informed Smith that if she determined that he could not properly invoke the Fifth Amendment, he could be imprisoned for contempt. Smith indicated that he under-

stood. The State then proffered the testimony of the lead detective in the underlying action that Smith was not a suspect in the case nor was there any evidence against him in the case. The trial judge declined to hear the detective's testimony and engaged in the following discussion:

[THE COURT]: [Smith's counsel]'s in a better position than anybody to know that and [Smith's counsel] advises he does not, in your view, have a Fifth Amendment privilege?

[SMITH'S COUNSEL]: **That's correct, based upon everything he told me.**

[DEFENSE COUNSEL]: [Smith's counsel] is acting as his counsel?

[THE COURT]: Yes.

[DEFENSE COUNSEL]: And as a friend of the Court for these purposes?

[THE COURT]: Yes. The Court appointed counsel to represent Mr. Smith for this purpose.

[DEFENSE COUNSEL]: If he is evaluating him, he should be qualified as an expert in his capacity of an attorney.

[THE COURT]: No.

(Emphasis added).

The State recalled Smith, who continued to refuse to respond although without explicitly invoking the protections of the Fifth Amendment. The trial judge then asked Smith:

[THE COURT]: You're invoking your Fifth Amendment privilege?

[SMITH]: Refusing to say anything else.

[THE COURT]: Well, I want to be clear because it makes a difference, Mr. Smith. Are you saying that you believe you have a Fifth Amendment privilege and you are not going to answer on the grounds the answers may tend to incriminate you?

[SMITH]: I don't. I'm just not a witness. I'm not saying anything else.

[THE COURT]: All right.

You understand that the Court has examined and heard the testimony and it does not believe that you have the right to not be with the program or invoke your Fifth Amendment, do you understand that?

* * *

[SMITH]: No, I don't.

[THE COURT]: All right.

[SMITH]: I'm not going to say anything. I don't know anything. I'm not saying anything.

[THE COURT]: I understand that, and I'm telling you that the Court has determined that you have no right to not—to invoke your Fifth Amendment privilege, and I'm ordering you to answer the question.

[SMITH]: I refuse to say anything else.

[THE COURT]: You under stand that, in light of the fact that I've ordered you, that you would be in contempt of Court if you refuse to answer the question?

[SMITH]: Yes, ma'am.

[THE COURT]: All right.

Counsel, approach. Is there something that you want to say, [defense counsel]? Come to the Bench. The jury can hear everything you say when you stand out there.

(Whereupon, the parties approached the Bench and the following proceedings ensued on the record:)

[DEFENSE COUNSEL]: Keeping it succinct—and I apologize to the Court—I thought you wanted to make an inquiry whether or not he had a Fifth.

[THE COURT]: I did make the inquiry.

[DEFENSE COUNSEL]: I thought that was the purpose of having him questioned. That's it.

[THE COURT]: Let me explain to you that he has to invoke the Fifth.

[DEFENSE COUNSEL]: I understand that.

[THE COURT]: Until this moment, he has not invoked the Fifth Amendment. He said I don't know.

[DEFENSE COUNSEL]: Then you made the determination that he didn't have the Fifth.

[THE COURT]: **Based upon the proffer that the State gave me and on [Smith's counsel]'s statement, I determined that he did not have a Fifth Amendment privilege.** Is there something that you want to bring to the Court's attention?

[DEFENSE COUNSEL]: Just note an objection.

[THE COURT]: Objection to what?

[DEFENSE COUNSEL]: That even though the State made a proffer and he had counsel, the State was trying to elicit information whether or not he had a Fifth Amendment right.

[THE COURT]: I don't understand.

[DEFENSE COUNSEL]: I'm saying, you made a determination that he did not have a Fifth Amendment right and that was based upon what took place at the Bench.

[THE COURT]: **I just said it was based upon the proffer from the state and [Smith's counsel]'s statement that, after consulting with his client, he didn't believe he had a Fifth Amendment privilege.**

[DEFENSE COUNSEL]: I have nothing further.

\* \* \*

[THE COURT]: Let the record reflect that Mr. Smith refuses to answer the questions properly put to him by the State, that his contempt has interrupted the order of the Court by refusing to answer the lawful order of the Court by refusing to answer the lawful order to testify, that Mr. Smith has no Fifth Amendment privilege and, therefore, the Court will find him guilty of contempt beyond a reasonable doubt.

Now, Mr. Smith, I'm going to hold sentencing in this matter sub curia. If you change your mind and decide to testify, I will consider that as a factor in sentencing you. Otherwise, at the conclusion of this trial, you'll be sentenced for contempt of court, you understand?

[Speaking to Counsel for Smith], I will let you know when we get closer to sentencing.

[SMITH'S COUNSEL]: Yes.

[DEFENSE COUNSEL]: I don't think the witness stated on the record his answer.

[THE COURT]: I didn't hear.

[DEFENSE COUNSEL]: The witness didn't answer on the record to your question.

[THE COURT]: He just nodded. I don't know what you are talking about.

[DEFENSE COUNSEL]: He just nodded yes.

[THE COURT]: Thank you.

(Emphasis added). The trial proceeded.

On November 12, 2002, two days after the conclusion of the case,[2] the same trial judge conducted a separately docketed hearing and imposed a five-month sentence for direct criminal contempt upon Smith. Six days after that hearing, the trial judge issued an order, which provided:

> Having found Jeffrey Smith in direct criminal contempt for failing to testify in the case of *State v. Anthony Morgan* and Carlos Woods, 102235018–21, it is this 18 day of November 2003, by the Circuit Court for Baltimore City, Part 30 hereby ORDERED that Defendant be sentenced to a period of Five (5) Months to the Division of Corrections to be served consecutively to any sentence Mr. Smith is now serving.

Smith thereafter filed his notice of appeal to the Court of Special Appeals.

The Court of Special Appeals, in an unreported opinion, determined that the trial judge made an adequate independent determination of the validity of Smith's invocation of the Fifth Amendment. Moreover, the intermediate appellate court concluded that the trial judge's deferral of sanctions until a

---

2. On November 10, 2003, a judgment of acquittal was entered on behalf of both defendants in the underlying case, *State v. Morgan, et al.*

separate hearing did not change the summary nature of the proceedings. The Court of Special Appeals declined to reach the issue of whether Smith was denied effective assistance of counsel because it determined that the issue should be presented in a post conviction proceeding.

On December 6, 2005, Smith filed a petition for writ of certiorari with this Court and presented the following questions for our consideration:

1. (A) Did the Court of Special Appeals err in refusing to address Petitioner's claim of ineffective assistance of counsel, where Petitioner had no available post conviction remedy, and where the record contained all of the facts necessary to decide the claim? (B) Whether a witness is deprived of his Sixth Amendment right to effective assistance of counsel where the witness is held in contempt as a result of his attorney's unauthorized disclosure of privileged and confidential information?

2. Where a non-immunized witness invoked the Fifth Amendment and refuses to testify, must a trial court independently assess the merits of the Fifth Amendment claim, or may a court rely on nothing more than a prosecutor's assertion and a public defender's unauthorized disclosure of conclusory legal analysis protected by the attorney-client privilege to hold a witness in contempt for refusing to testify?

3. Whether Maryland Rule 15–204 applies where a court promptly finds that direct contempt has been committed, but declines to impose sanctions until a separately docketed hearing after the conclusion of the proceeding during which the contempt allegedly was committed?

We granted the petition and issued the writ. *Smith v. State,* 391 Md. 114, 892 A.2d 477 (2006). We determine that Smith received ineffective assistance of counsel when his attorney disclosed the nature of his advice to Smith and advised the trial judge as to his opinion regarding the application of the Fifth Amendment. Moreover, we conclude that the trial judge committed multiple errors with respect to her determination

that Smith did not have a valid basis for asserting his Fifth Amendment right against self-incrimination and the procedures that she adhered to when she imposed sanctions for Smith's contempt.

## *Discussion*

Smith argues that his criminal contempt conviction should be vacated because he was denied his right to effective assistance of counsel under the Sixth Amendment. As a threshold matter, Smith asserts that, although post-conviction proceedings generally are the preferred mechanism for pursuing a claim of ineffective assistance of counsel, the record was adequately developed below for this Court to address the issue on direct appeal. According to Smith, there is no dispute that Smith's counsel was appointed by the trial court to represent him and counsel him concerning his Fifth Amendment rights. Nor, in Smith's view, is there any dispute that Smith's counsel disclosed legal advice and opinions that were protected by the attorney-client privilege. Therefore, he concludes that he was denied effective assistance of counsel.

Smith also contends that the trial judge in the present case failed to consider all of the relevant circumstances when she concluded that he was not entitled to invoke the protections of the Fifth Amendment. He further asserts that the trial judge was required to conduct an independent inquiry into whether his assertion of the Fifth Amendment privilege against self-incrimination was valid under the circumstances, which did not occur in the present case.

As his final argument, Smith further asserts that the trial judge did not summarily impose sanctions following her determination that he was guilty of direct criminal contempt and that, therefore, his contempt conviction must be vacated because the trial court failed to comply with the applicable Maryland Rules governing contempt proceedings.

Conversely, the State asserts that Smith's ineffective assistance of counsel claim is improperly raised on direct appeal. It contends that such a claim is more appropriately brought in

post conviction proceedings. The State also argues that the trial court properly found Smith in contempt of court based on his refusal to testify when called as a witness. The State contends that the record below demonstrates that the trial court made a thorough inquiry into whether Smith was entitled to invoke the Fifth Amendment privilege against self-incrimination and that it appropriately relied upon the representations made by the prosecutor and Smith's appointed counsel in so doing.

The State also asserts that Smith's appointed counsel did not disclose any privileged communications because the trial court appointed him to advise Smith concerning the applicability of the Fifth Amendment to his situation as well as the consequences of refusing to testify where the court has determined that the Fifth Amendment does not apply. Therefore, according to the State, the disclosure of any communications between Smith and his counsel were authorized under the circumstances because he was required to inform the court on the record as to whether Smith was entitled to assert his privilege.

With respect to Smith's argument that the trial court did not follow the proper procedures when it imposed sanctions for contempt, the State counters that the trial court's decision to defer the imposition of sanctions until after the conclusion of the shooting trial did not alter the summary nature of the sanctions. Thus, the State argues that the trial judge complied with the applicable Maryland Rules and there is no basis for disturbing her ruling.

### Ineffective Assistance of Counsel

We have repeatedly held that a claim of ineffective assistance of counsel generally should be raised in a post-conviction proceeding.[3] *See Austin v. State,* 327 Md. 375, 394, 609 A.2d 728, 737 (1992); *Johnson v. State,* 292 Md. 405, 434–

---

**3.** Title 7 of the Criminal Procedure Act contains the statutory provisions comprising the Uniform Postconviction Procedure Act. Md.Code (2001), §§ 7–101 to 7–301 of the Criminal Procedure Article.

35, 439 A.2d 542, 559 (1982); *see also In re Parris W.*, 363 Md. 717, 726, 770 A.2d 202, 207 (2001) (observing that post-conviction proceedings have generally been the preferred mechanism for addressing ineffective assistance of counsel claims). The main justification for the rule is that, generally, the trial record does not provide adequate detail upon which the reviewing court could base an assessment regarding whether counsel rendered ineffective assistance because the character of counsel's representation is not the focus of the proceedings and there is no discussion of counsel's strategy supporting the conduct in issue. *In re Parris W.*, 363 Md. at 726, 770 A.2d at 207; *Johnson*, 292 Md. at 434–35, 439 A.2d at 559. In *In re Parris W.*, we noted that the general rule, however, is not "absolute and, where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim, there is no need for a collateral fact-finding proceeding, and review on direct appeal may be appropriate and desirable." *Id.* at 726, 770 A.2d at 207. *See also Harris v. State*, 299 Md. 511, 517–18, 474 A.2d 890, 893 (1984); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir.1998); *United States v. Ortiz*, 146 F.3d 25, 27 (1st Cir.1998); *United States v. Gwiazdzinski*, 141 F.3d 784, 789 (7th Cir.1998); *United States v. Toms*, 136 F.3d 176, 182 (D.C.Cir.1998); *United States v. Lightbourne*, 104 F.3d 1172, 1178 (9th Cir.1997); *United States v. Fry*, 51 F.3d 543, 545 (5th Cir.1995); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993); *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir.1992); *Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir.1984); *United States v. Aulet*, 618 F.2d 182, 185–86 (2d Cir.1980); *Austin*, 327 Md. at 394, 609 A.2d at 737; *Johnson*, 292 Md. at 435 n. 15, 439 A.2d at 559 n. 15; *People v. Tello*, 15 Cal.4th 264, 62 Cal.Rptr.2d 437, 933 P.2d 1134, 1135–36 (1997).

Smith argues that the record in the present case is adequately developed so as to permit the issue of ineffective assistance of counsel to be addressed on direct appeal; whereas the State contends that post-conviction proceedings should be undertaken. Moreover, the State asserts that counsel's

error was not so blatant or egregious that direct review is appropriate.

 Smith's claim arises out of disclosures in which his counsel revealed allegedly privileged information to the trial court and upon which the judge repeatedly stated that her determination concerning Smith's Fifth Amendment rights "was based upon the proffer of the state and [Smith's counsel]'s statement that, after consulting with his client, he didn't believe he had a Fifth Amendment privilege." As we noted in *Newman v. State*, 384 Md. 285, 863 A.2d 321 (2004), "only the client has [the] power to waive the attorney-client privilege." *Id.* at 308, 863 A.2d at 334. We have defined waiver as "the intentional relinquishment of a known right." *Harrison v. State*, 276 Md. 122, 138, 345 A.2d 830, 840 (1975), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Intrinsic to the definition of "waiver" is the recognition that the client must be informed of both the scope and nature of the right being relinquished as well as the consequences of so doing. In the present case, as we have determined *infra*, Smith's counsel had an inherent conflict of interest between his duties to Smith and his asserted duties to the trial court. As such, Smith's attorney could not impartially advise him regarding any waiver of the attorney-client privilege because the trial court had an interest in learning counsel's advice to Smith. Thus, regardless of whether Smith waived his attorney-client privilege either expressly or implicitly, the waiver would be ineffective. Moreover, we can conceive of no circumstances that would require Smith's counsel to reveal the substance of his advice to the court, as such a disclosure could only inure to his client's detriment. Therefore, we conclude that a collateral evidentiary hearing concerning Smith's counsel's disclosure would be superfluous. Our refusal to address Smith's claim on direct appeal would constitute a waste of judicial resources. *See In re Parris W.*, 363 Md. at 727, 770 A.2d at 207.

 Because Smith's assertion of ineffective assistance of counsel is premised on an alleged violation of his attorney-

client privilege, which only arises after the creation of an attorney-client relationship, we must first examine whether a client-lawyer relationship existed at the time that Smith's counsel advised him regarding his Fifth Amendment rights. *Huester v. Clements*, 252 Md. 641, 646, 250 A.2d 855, 859 (1969) (noting that "[o]nce the relationship of attorney and client was established, a fortiori, the communication was confidential, and inadmissible in evidence."). We have previously noted that "[w]hat constitutes an attorney-client relationship is a rather elusive concept." *Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 650, 732 A.2d 876, 883 (1999), quoting *Folly Farms I, Inc. v. Trustees*, 282 Md. 659, 670, 387 A.2d 248, 254 (1978). In *Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 821 A.2d 414 (2003), we adopted the following test for determining whether an attorney-client relationship exists:

A relationship of client and lawyer arises when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and . . .

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services. . . .

*Id.* at 174, 821 A.2d at 425, quoting Restatement (Third) of the Law Governing Lawyers § 14 (2000). We noted, however, that an attorney-client relationship may be formed without an express agreement between the parties. *Brooke*, 374 Md. at 173, 821 A.2d at 424, citing *Shaw*, 354 Md. at 650–51, 732 A.2d at 883. As such, "[t]he relationship may arise by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations." *Brooke*, 374 Md. at 175, 821 A.2d at 425.

In the present case, the parties do not dispute that an attorney-client relationship existed between Smith and his appointed counsel at the time that the attorney advised Smith regarding the validity of his invocation of the Fifth Amendment. After Smith's initial assertion of his Fifth Amendment

right against self-incrimination, the trial judge contacted the Office of the Public Defender, which appointed counsel for Smith, who immediately upon arriving at the court met with Smith to advise him regarding Smith's refusal to testify under the Fifth Amendment. During the proceedings, the trial judge reaffirmed appointed counsel's role as Smith's counsel in response to an inquiry by one of the defense lawyers. Moreover, Smith consulted with counsel concerning his rights under the Fifth Amendment and his attorney rendered legal advice on that issue. Therefore, we find that an attorney-client relationship existed when Smith and his counsel conferred about the validity of Smith's invocation of the Fifth Amendment privilege against self-incrimination.

■ Because we have concluded that an attorney-client relationship existed between Smith and his appointed counsel at the time that the attorney advised Smith regarding his rights under the Fifth Amendment, we must determine whether disclosing such advice constituted a violation of the attorney-client privilege. As we observed in *Lanasa v. State,* 109 Md. 602, 71 A. 1058 (1909), "[t]o make the communications privileged, they . . . must relate to professional advice and to the subject-matter about which the advice is sought." *Id.* at 617, 71 A. at 1064. Moreover, we have stated repeatedly that "[o]nly the client has [the] power to waive the attorney-client privilege." *Newman,* 384 Md. at 308, 863 A.2d at 335, citing *Parler & Wobber v. Miles & Stockbridge, P.C.,* 359 Md. 671, 691, 756 A.2d 526, 537 (2000).

■ Although we generally have discussed the attorney-client privilege with respect to the disclosure of confidential communications made by the client to the attorney, *see New-man,* 384 Md. at 302, 863 A.2d at 330–31, there are circumstances in which the disclosure of the attorney's opinions, impressions, or perceptions relating to the attorney-client relationship will result in the indirect disclosure of the substance of the communications. *See Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26, 37 (D.Md.1974) (stating that "[t]he privilege further extends to the attorney's legal advice

and opinions which encompass the thoughts and confidences of the client."); *United States v. Kendrick*, 331 F.2d 110, 115 (4th Cir.1964) (Sobeloff, C.J.concurring) ("The lawyer's observations were inextricably intertwined with communications which passed between him and his client.... The fact that a lawyer may be in a position to give enlightening testimony is not itself sufficient reason for relaxing the client's privileges. In many cases the client may have confessed his guilt to the lawyer, who would then be in an excellent position to give effective testimony, but our tradition forbids such disclosure."); *Gunther v. United States*, 230 F.2d 222, 223–24 (D.C.Cir.1956) (holding that "[i]f trial counsel in a criminal case could be called by the Government and asked to give an opinion as to the accused's competency and ability to assist in the defense, he could necessarily also be asked for the factual data upon which he premised is opinion.... Such revelations would be a violation of the attorney-client privilege and would also invade an accused's right to counsel in the trial of the criminal charge."); *State v. Meeks*, 263 Wis.2d 794, 666 N.W.2d 859, 870 (2003) ("We agree with the jurisdictions that hold that an attorney[']s opinions, perceptions, and impressions ... are protected by the attorney-client privilege."); *State v. Adams*, 277 S.C. 115, 283 S.E.2d 582, 586 (1981) (stating, "We believe that the spirit of this policy [the attorney-client privilege] dictates that not only is the conversation protected but the entire setting of the confidential conference must be protected as well. To lend privilege to the words spoken but to allow disclosure of professional impressions drawn from the manner of their delivery all but destroys the substance of their privilege."). Because an attorney's advice is necessarily tailored to the information communicated by his or her client, any disclosure of the advice given by the attorney is an implicit revelation of the statements and position of the client. Therefore, we agree with those jurisdictions that have concluded that to permit an attorney to reveal the substance of his or her advice or opinions derived from consultation with the client would violate the attorney-client privilege.

■ In the present case, Smith's counsel specifically referenced Smith's communications to him as providing the basis for his opinion that Smith did not have a valid basis for invoking the Fifth Amendment privilege against self-incrimination when he responded to the trial judge's inquiry:

> [THE COURT]: [Smith's counsel]'s in a better position than anybody to know that and [Smith's counsel] advises he does not, in your view have a Fifth Amendment privilege?
>
> [SMITH'S COUNSEL]: That's correct, based upon everything he told me.

Smith's counsel's advice was derived from statements made by Smith and, as such, indirectly revealed to the trial court the substance of those communications, specifically, that Smith could not articulate a valid basis for seeking Fifth Amendment protection. Therefore, Smith's lawyer's disclosure to the trial court was made in violation of that privilege.

■ Upon our determination that Smith's attorney violated the attorney-client privilege when he discussed his assessment of the status of Smith's Fifth Amendment assertion, the issue becomes whether this disclosure was an "error[] so serious that counsel was not functioning as 'counsel.'" *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The Sixth Amendment to the United States Constitution,[4] applicable to the states through the Fourteenth Amendment, and Article 21 of the Maryland Declaration of Rights,[5] "guarantee criminal defendants the right to the assistance of counsel at critical stages of the proceedings." *Mosley v. State*, 378 Md. 548, 556, 836 A.2d 678, 682–83 (2003). *See also United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039,

---

**4.** The Sixth Amendment provides in relevant part:
> In all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

**5.** Article 21 of the Maryland Declaration of Rights provides in pertinent part:
> That in all criminal prosecutions, every man hath a right . . . to be allowed counsel. . . .

Md. Const. Declaration of Rights, Art. 21.

2047, 80 L.Ed.2d 657, 668 (1984); *Strickland,* 466 U.S. at 684–85, 104 S.Ct. at 2063, 80 L.Ed.2d at 691; *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 804–05 (1963); *Glasser v. United States,* 315 U.S. 60, 69–70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680, 699 (1942); *Lettley v. State,* 358 Md. 26, 33, 746 A.2d 392, 396 (2000); *State v. Wischhusen,* 342 Md. 530, 537, 677 A.2d 595, 598 (1996); *Austin v. State,* 327 Md. at 381, 609 A.2d at 730–31; *Harris v. State,* 303 Md. 685, 695 n. 3, 496 A.2d 1074, 1079 n. 3 (1985). Fundamental to this right is the right to effective assistance of counsel. *Mosley,* 378 Md. at 557, 836 A.2d at 683; *Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305, 321 (1986); *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692; *In re Parris W.,* 363 Md. 717, 724, 770 A.2d 202, 206 (2001); *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986). Moreover, the Maryland Public Defender Act guarantees "effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal ... proceedings before the courts of the State of Maryland." Md.Code (1957, 2003 Repl.Vol.), Art. 27A, § 1. Because an attorney-client relationship was established between Smith and his counsel at the time of the disclosure, Smith was entitled to effective representation by his attorney.

 The Supreme Court in *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693, addressed the question of how an individual may prevail on a claim of ineffective assistance of counsel. In that case, the Supreme Court determined that a defendant must prove that counsel's performance failed to satisfy an objective standard of reasonableness and that counsel's performance resulted in prejudice to the defendant. *Id.* As we noted in *Mosley,* "[t]his two-pronged test serves to correct the adversarial process when it has failed to render a reliable trial result." *Id.* at 557, 836 A.2d at 683, citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary

process that renders the result unreliable."). Thus, when a defendant is denied effective assistance of counsel, "it is the integrity of the adversarial process that is compromised." *Mosley,* 378 Md. at 557, 836 A.2d at 683.

■ The assessment of counsel's performance is based on a comparison to "prevailing professional norms." *In re Parris,* 363 Md. at 725, 770 A.2d at 206; *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65, 80 L.Ed.2d at 694; *Perry v. State,* 357 Md. 37, 79, 741 A.2d 1162, 1184 (1999). These "norms" determine what comprises reasonably effective assistance and require that all of the circumstances surrounding counsel's performance be considered. *Mosley,* 378 Md. at 557, 836 A.2d at 683, citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

■ In *Harris v. State,* 303 Md. 685, 698, 496 A.2d 1074, 1081 (1985), we noted that courts must give great deference when evaluating counsel's performance and that courts must presume, until proven otherwise, that counsel's conduct was reasonable within his or her professional judgment and that the conduct was part of a trial strategy. Concerning the second prong of the *Strickland* test, the Supreme Court stated that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. Thus, for the defendant to prevail on a claim for ineffective assistance of counsel, he or she must also establish prejudice.

After conferring with Smith, Smith's counsel informed the trial judge, when asked whether Smith intended to invoke his Fifth Amendment:

Yes. Also, prior to speaking with Mr. Smith, I spoke with counsel for the State, . . ., to get a background on what the case was all about and what Mr. Smith's involvement might be regarding his Fifth Amendment privilege and, **as far as I can determine, after speaking with [the prosecutor] and speaking with Mr. Smith, I have advised him that I could**

**not find any constitutional basis for his pleading the Fifth Amendment in this case. I also advised him of the potential consequences of his continuing to make that plea and disobey any orders from the Court to testify in spite of his wishes.**

(Emphasis added). Smith asserts that this disclosure to the trial court violated his attorney-client privilege and that, as a result, he received ineffective assistance of counsel.

Smith's counsel was asked by the trial judge whether "Mr. Smith [was] ready to invoke his Fifth Amendment privilege." Smith's counsel initially responded, "Yes." Had his answer ended there, Smith's claim of ineffective assistance of counsel would be without basis. When, however, Smith's counsel proceeded to disclose his legal advice to Smith based, in part, on his discussions with Smith, he was putting his client in peril of being held in contempt. Absent a waiver of his attorney-client privilege by Smith, his attorney was not empowered to make such a disclosure. Moreover, there could be no circumstance that could justify Smith's counsel making a disclosure inuring only to Smith's detriment. Furthermore, the attorney for one of the defendants on trial recognized the impropriety of Smith's counsel's disclosure and questioned the trial judge:

[DEFENSE COUNSEL]: [Smith's counsel] is acting as his counsel?

[THE COURT]: Yes.

[DEFENSE COUNSEL]: And as friend of the Court for these purposes?

[THE COURT]: Yes. The Court appointed counsel to represent Mr. Smith for this purpose.

Smith's counsel could not represent Smith as required under the Sixth Amendment, Article 21 of the Maryland Declaration of Rights, and the Maryland Public Defender Act, Md.Code (1957, 2003 Repl. Vol.), Art. 27A, §§ 1–14, and simultaneously act as an advisor to the trial judge, who was considering whether to hold Smith in contempt. As we noted in *Sinclair v. State*, 278 Md. 243, 363 A.2d 468 (1976):

An attorney at law who has one been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the same general matter, however slight such adverse interest may be. Nor does it matter that the intention and motive of the attorney are honest. This rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he alone represents.

*Id.* at 253–54, 363 A.2d at 474–75, quoting *Derlin v. Derlin,* 142 Md. 352, 364, 121 A. 27 (1923). The conflict of interest presented to Smith's counsel was thus simply put: advise Smith and respond to the court that he had done so, or advise the trial judge that Smith was eligible for contempt because he had no valid Fifth Amendment privilege. Smith's counsel could not act both as a friend of the court and as an advocate on behalf of Smith without rendering his representation outside of any prevailing professional norm within the *Strickland* rubric.

With respect to the prejudice prong of *Strickland,* we have defined prejudice in the context as "a substantial possibility that, but for counsel's error, the result of his proceeding would have been different." *In re Parris W.,* 363 Md. at 727–28, 770 A.2d at 208. Certainly there was explicit reliance on Smith's counsel's representation by the trial judge when she declared:

Based upon the proffer that the State gave me and on [Smith's counsel]'s statement, I determined that he did not have a Fifth Amendment privilege.

Moreover, the trial judge, in fact, iterated her reliance on more than one occasion and stated:

I just said it was based upon the proffer from the state and [Smith's counsel]'s statement that, after consulting with his

client, he didn't believe he had a Fifth Amendment privilege.

Therefore, we conclude that Smith has established a violation of his right to effective representation under the Sixth Amendment under the *Strickland* standard.

We further determine that the trial judge in the present case erred when she required the attorney for Smith to act both as an advocate for Smith and as a friend to the court. It was impossible for Smith's counsel to fulfill both roles without compromising his duty of loyalty to Smith. Smith was entitled to representation free of conflict of interest, and it was improper for the trial judge to create a scenario that infringed upon Smith's right.

### The Trial Court's Independent Evaluation of the Existence of the Fifth Amendment Privilege

 Smith also argues that the trial judge did not properly conduct an independent evaluation of his entitlement to invoke the Fifth Amendment privilege against self-incrimination. The privilege against self-incrimination is guaranteed under both Article 22 of the Maryland Declaration of Rights,[6] and the Fifth Amendment to the United States Constitution, which is made applicable to the States through the Fourteenth Amendment.[7] *See Gray v. State,* 368 Md. 529, 549–50, 796 A.2d 697, 708–09 (2002); *Crosby v. State,* 366 Md. 518, 526–28, 784 A.2d 1102,1106–07 (2001); *Bhagwat v. State,* 338 Md. 263, 270–71, 658 A.2d 244, 247 (1995); *Choi v. State,* 316 Md. 529, 536, 560 A.2d 1108, 1111 (1989); *Allen v. State,* 183 Md. 603, 606–07, 39 A.2d 820, 821–22 (1944); *Marshall v. State,* 182 Md. 379, 383, 35 A.2d 115, 117 (1943). Describing the nature of the

---

6. Article 22 of the Maryland Declaration of Rights provides in pertinent part:

 [N]o man ought to be compelled to give evidence against himself in a criminal case.

7. The Fifth Amendment provides in pertinent part:

 [N]o person ... shall be compelled in any criminal case to be a witness against himself.

privilege under the Fifth Amendment, we noted that "the privilege is not a prohibition of inquiry, but is an option of refusal." *Royal v. State*, 236 Md. 443, 447, 204 A.2d 500, 502 (1964).

In the present case, Smith argues that the trial judge was required to make an independent inquiry into whether his assertion of the Fifth Amendment privilege against self-incrimination was valid under the circumstances of the case at bar, but that she did not do so. The State does not contest the fact that an independent inquiry was required, but rather, counters that the examination that occurred in the case *sub judice* was sufficient.

In *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the United States Supreme Court announced that "[i]t is for the court to say whether [the defendant's] silence is justified . . . and to require him to answer if 'it clearly appears to the court that he is mistaken.'" *Id.* at 486, 71 S.Ct. at 818, 95 L.Ed. at 1124, quoting *Temple v. Commonwealth*, 75 Va. 892, 899 (1881). The Court further explicated that "[t]he trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Id.*, quoting *Ex parte Irvine*, 74 F. 954, 960 (C.C.S.D.Ohio 1896). Examining what circumstances should be considered in ruling on a claim of Fifth Amendment privilege, the Supreme Court stated that the court should recognize the fact that "the chief occupation of some persons involves the evasion of . . . criminal law;" and that "one person with a police record summoned to testify . . . might be hiding or helping to hide another person of questionable repute sought as a witness." *Id.* at 487–88, 71 S.Ct. at 819, 95 L.Ed. at 1125. Ultimately, the Court observed that for the trial court to determine that the Fifth Amendment privilege does not apply, it must be "'*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such a tendency' to incriminate." *Id.*, quoting *Temple*, 75 Va. at 898 (emphasis in original).

■ We addressed the appropriate procedure for determining whether a witness's assertion of the Fifth Amendment privilege is proper most recently in *Bhagwat, supra.* We stated:

And 'because the privilege is not a prohibition of inquiry, but is an option of refusal,' [t]he witness should first be called to the stand and sworn. *Midgett v. State,* 223 Md. 282, 289, 164 A.2d 526, 529 (1960), *cert. denied,* 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to the point where he [or she] asserts his [or her] privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State,* 245 Md. 169, 173–74, 225 A.2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to 'determine whether the claim of privilege is in good faith or lacks any reasonable basis.' *Midgett v. State, supra,* 223 Md. at 289[, 164 A.2d at 530]. If further interrogation is pursued, then the witness should either answer the questions asked or assert his [or her] privilege, making this decision on a question by question basis. *Royal v. State,* 236 Md. 443, 447, 204 A.2d 500, 502 (1964).

*Id.* at 271–72, 658 A.2d at 247–48 (alterations in original), quoting *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1024 (1979). This procedure, however, need not be followed strictly where "there is a clear indication, reflected on the record, that the witness intends to invoke the privilege against self-incrimination if called to the witness stand." *Id.* at 273, 658 A.2d at 248. In that scenario,

if it is a jury trial, '[t]he mechanical procedure of first calling the witness before the jury' should be omitted. In other words, the witness should be called and sworn, but without the jury being present, and questioned before or by the court. In this way, the court is enabled to perform its function of determining whether the privilege has been invoked in good faith or has a reasonable basis.

*Id.* at 273–74, 658 A.2d at 248–49 (alterations in original).

In the present case, the trial judge, when Smith refused to respond to a question asking for his date of birth, summarily

responded that the Fifth Amendment privilege did not apply to that information without considering the totality of the circumstances prior to making such a pronouncement as required under *Hoffman*, 341 U.S. at 488, 71 S.Ct. at 819, 95 L.Ed. at 1125. Although ordinarily an individual's date of birth is not protected by the Fifth Amendment's privilege against self-incrimination, there may exist circumstances in which the revelation of a person's date of birth is incriminating. *See Pennsylvania v. Muniz*, 496 U.S. 582, 592–93, 110 S.Ct. 2638, 2645–49, 110 L.Ed.2d 528, 546–51 (1990) (holding that based on the circumstances in that case the defendant's response to a question asking for the date of his sixth birthday was incriminating due to the defendant's demeanor and the content of the answer). Moreover, the trial judge in the case *sub judice* failed to make any inquiry of Smith regarding his invocation of the Fifth Amendment privilege with respect to any other information solicited by the prosecution's questions. The trial judge should have examined each question that the prosecution and defense intended to ask of Smith with the intention of determining whether the question might elicit an incriminating answer.

Moreover, the trial judge claimed to have relied solely on a proffer by the prosecutor and the legal conclusions espoused by Smith's counsel to find that Smith had no Fifth Amendment privilege with respect to *any* subject raised in questioning. As we determined *supra*, the disclosure made by Smith's counsel violated Smith's attorney-client privilege. As such, the disclosure was not admissible evidence upon which the trial judge could rely to reach her conclusion regarding the Fifth Amendment. *See Newman*, 384 Md. at 317, 863 A.2d at 340; *Huester v. Clements*, 252 Md. 641, 646, 250 A.2d 855, 859 (1969) (stating that "[o]nce the relationship of attorney and client was established, a fortiori, the communication was confidential, and inadmissible in evidence"); *Tillinghast v. Lamp*, 168 Md. 34, 42, 176 A. 629, 632 (1935) (holding that privileged communications between an attorney and her client are inadmissible). Therefore, the trial judge erred in basing her determination that Smith did not have valid grounds for

invoking the Fifth Amendment privilege against self-incrimination upon the disclosures made by Smith's attorney in violation of the attorney-client privilege.

### The Imposition of Sanctions for Direct Criminal Contempt

 Smith also asserts that the trial judge did not follow the required procedures when she imposed the sanction for his direct criminal contempt. Specifically, Smith argues that because the sanction was meted out in a separately docketed proceeding, it cannot be considered to have been imposed summarily and as such, the trial judge's actions did not comply with the appropriate Maryland Rules.

The parties do not dispute that the trial judge found Smith to be in direct criminal contempt. The issue, rather, is whether the trial judge in the case *sub judice* summarily imposed sanctions under Maryland Rule 15–203, or whether the imposition of sanctions should have been governed by Maryland Rules 15–204, 15–205, and 15–207.

Maryland Rule 15–203 provides in pertinent part:

(a) **Summary imposition of sanctions.** The court against which a direct civil or criminal contempt has been committed may impose sanctions on the person who committed it summarily if (1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business. The court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information. If the court summarily finds and announces on the record that direct contempt has been committed, the court may defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed.

Both the State and the Court of Special Appeals rely upon language in the Committee Note to Maryland Rule 15–203 for their conclusion that the contempt proceedings remained summary in nature despite the fact that the trial court imposed sanctions during a separately docketed hearing. The Committee Note to Maryland Rule 15–203 states:

> Sanctions may be imposed immediately upon the finding of the contempt, or, in the court's discretion, may be deferred to a later time in the proceeding. Deferral of a sanction does not affect its summary nature. The sanction remains summary in nature in that no hearing is required; the court simply announces and imposes the sanction.

Both the plain language of Maryland Rule 15–203(a) and the commentary contained in the Committee Note contemplate a deferral of sanctions until later in the proceedings in which the contempt occurred or immediately upon the conclusion of the proceedings. The term "summary" generally connotes an immediate action undertaken without following the usual formal procedures. *See* Black's Law Dictionary 1476 (8th ed.2004). The procedures implemented in the case *sub judice* were neither immediate nor without the usual formalities of a hearing. The fact that the court held an independently docketed proceeding in which to dispense sanctions is entirely inconsistent with the concept of summary proceedings. Moreover, the trial judge engaged in an involved colloquy with Smith, permitted his attorney to present a mitigating argument, and solicited sentencing recommendations from the State and Smith's counsel. This case provides a stark contrast to *Mitchell v. State*, 320 Md. 756, 580 A.2d 196 (1990), in which the trial court summarily imposed sanctions for Mitchell's contempt during his sentencing proceeding immediately after imposing the sentence for the underlying crime. Thus, circumstances of the present case lack the hallmarks of summary imposition of sanctions under Maryland Rule 15–203(a). Because the trial judge did not summarily impose sanctions for Smith's direct criminal contempt, Maryland Rule 15–204 governs the imposition of sanctions, and provides:

In any proceeding involving a direct contempt for which the court determines not to impose sanctions summarily, the judge, reasonably promptly after the conduct, shall issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constituting the contempt and the identity of the contemnor. Thereafter, the proceeding shall be conducted pursuant to Rule 15–205 or Rule 15–206, whichever is applicable, and Rule 15–207 in the same manner as constructive contempt.

Therefore, the trial judge erred in characterizing the imposition of sanctions in the present case as summary in nature and should have followed the procedures delineated in Maryland Rules 15–204, 15–205, 15–206, and 15–207.

### *Conclusion*

In the present case, Smith cannot be retried on the direct contempt because we have concluded that the trial judge's determination that Smith could not invoke his Fifth Amendment right was based on an improper disclosure by Smith's counsel without an independent inquiry. As a result, if we were to remand this case for further proceedings, the trial judge would have to make an independent inquiry on the record regarding Smith's right to invoke the Fifth Amendment privilege against self-incrimination, which is a legal impossibility because the proceeding in which the direct contempt arose has concluded and cannot be reopened. As we noted in *Archer v. State,* 383 Md. 329, 859 A.2d 210 (2004), "Direct contempt is committed in the presence of the trial judge or so near him or her as to interrupt the court's proceedings, while constructive contempt is any other form of contempt." *Id.* at 345, 859 A.2d at 219, quoting *Smith v. State,* 382 Md. 329, 338, 855 A.2d 339, 344 (2004) (internal citations omitted). Further proceedings in the present case concerning whether Smith's refusal to testify constituted contempt would be inconsistent with the purpose of empowering the trial court to sanction direct contempt, which is to "assur[e] the efficiency and dignity" of the judiciary. *State v. Roll,* 267 Md. 714, 726, 298 A.2d 867, 875 (1973). Therefore, we

shall reverse the judgment of the Court of Special Appeals and direct that court to reverse the judgment of the Circuit Court for Baltimore City with direction to dismiss the contempt action.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS TO DISMISS THE CONTEMPT ACTION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*